Dr. Edward BARRINGTON,
D.C., Appellant,

v.

ALASKA COMMUNICATIONS SYSTEMS
GROUP, INC.; Liberty Mutual Insurance Co.; and Alaska Workers' Compensation Appeals Commission, Appellees.

No. S–12609.

Supreme Court of Alaska.

Oct. 24, 2008.

As Amended on Denial of Rehearing
Jan. 29, 2009.

William J. Soule, Law Office of William J. Soule, Anchorage, for Appellant.

Jeffrey D. Holloway and Rebecca Holdiman Miller, Holmes Weddle & Barcott, P.C., Anchorage, for Appellees Alaska Communications Systems Group, Inc. and Liberty Mutual Insurance Company.

Krista S. Stearns, Assistant Attorney General, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Alaska Workers' Compensation Appeals Commission.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Dr. Edward Barrington performed medical services for a workers' compensation claim-

ant who later settled her claim with her employer, without notice to her unpaid healthcare providers, including Dr. Barrington. After the Alaska Workers' Compensation Board approved the settlement without notice to Dr. Barrington, he filed his own claim against the employer for payment. Both the board and the Alaska Workers' Compensation Appeals Commission held that the employee's settlement barred Dr. Barrington's claim. Because Dr. Barrington should have been given notice of the pending settlement, we reverse the decisions of the board and appeals commission and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Noelle Williams filed a workers' compensation claim against her employer, Alaska Communications Systems Group, Inc. (ACS), after she experienced job-related pain. ACS initially paid her medical bills but later controverted the need for further chiropractic treatment after its medical experts stated that any treatment Williams needed was not the result of a work-related injury. Her treating physician referred Williams to Dr. Edward Barrington for a permanent partial impairment (PPI) evaluation; Dr. Barrington performed the evaluation and electrodiagnostic testing in November 2004. ACS controverted all benefits in February 2005. When Dr. Barrington inquired, Williams's workers' compensation attorney told Dr. Barrington that his "claim was going to be included" with Williams's claim. According to Dr. Barrington, he delayed filing his own claim for payment based on this assurance. Williams's attorney indeed filed a copy of Dr. Barrington's bill with the board in March 2005.

In April 2005 Williams and ACS entered into a written settlement agreement, subject to board approval. Per the terms of the proposed settlement, Williams would accept $7,500 as payment for her workers' compensation claims, including any unpaid medical expenses; she would waive future medical benefits; and she would indemnify ACS for any payments it later made on her claim. The agreement did not disclose the total amount of Williams's outstanding medical bills and stated that the parties anticipated that the settlement amount was "more than sufficient to cover the costs of any future medical treatment that may be necessary." No one gave the unpaid healthcare providers, including Dr. Barrington, any notice of the proposed settlement or tried to join them as parties. The board approved the settlement agreement in May 2005 without a hearing.

Not long after the board approved the settlement, Williams filed for bankruptcy; she listed Dr. Barrington and other healthcare providers as creditors. The bankruptcy court discharged Williams's debt to Dr. Barrington and entered a final decree in September 2005.

Dr. Barrington filed a workers' compensation claim against ACS in early July 2005, seeking payment for his PPI evaluation.[1] ACS opposed, relying on its settlement with Williams. After a hearing, the board denied Dr. Barrington's claim, ruling that his recourse was against Williams in the civil courts. Dr. Barrington asked the board to reconsider, arguing that he should have been joined as a party before the settlement was approved. The board confirmed its earlier decision.

Dr. Barrington appealed to the appeals commission, which affirmed. The appeals commission agreed with the board that Dr. Barrington had a civil cause of action against Williams and decided that Dr. Barrington's due process rights were protected by "the survival of his common law action for collection of a debt if his claim is extinguished in a settlement to which he is not a party." It determined that Dr. Barrington did not need to be joined as "a real party in interest" because his "economic interest was represented in the employee's claim." The appeals commission further held that ACS's liability was extinguished by the settlement and that Dr. Barrington had no independent right to relief. Reasoning that no statute required notice to him, it rejected his contention that he should have at least received notice of the proposed settlement.

Dr. Barrington appeals.

---

1. Dr. Barrington later added a claim seeking payment for his diagnostic testing.

## III. DISCUSSION

### A. Standard of Review

■ When we review an administrative agency decision that has been appealed first to the superior court, we directly review the agency decision.[2] Here, the first level of review of the board decision was performed by an administrative agency, the Alaska Workers' Compensation Appeals Commission.[3]

Dr. Barrington asks us to review the board's decision directly, or at least give no deference to the appeals commission's decision. ACS and the appeals commission both argue that we should review the appeals commission's decision.

■ The parties also disagree about the type of question this appeal presents. According to ACS, the appeals commission's interpretation of the Alaska Workers' Compensation Act should be subject to reasonable basis review because the appeals commission has expertise in workers' compensation law. The standard of review we apply is based on the type of question presented.[4] We have frequently applied the independent judgment standard of review in construing the Alaska Workers' Compensation Act.[5]

■ This appeal presents issues of law that do not involve agency expertise. The board's decision was based on contract principles. The appeals commission ultimately based its decision on statutory interpretation and due process. We apply our independent judgment to the questions presented here, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[6]

■ Because appeals commission decisions have precedential value for the board and the appeals commission, because the appeals commission's decision represents the final administrative action in a workers' compensation case,[7] and because the questions presented raise questions of law not involving agency expertise, here we review the appeals commission's decision.

We decline to adopt here a general rule for appeals from the appeals commission about the standards we will use to review other types of rulings that may be presented in workers' compensation appeals, such as factual determinations, decisions committed to adjudicator discretion, or rulings on questions of law that involve agency expertise.[8] We also express no opinion about whether we will review the appeals commission's decision or the board's decision in other circumstances.[9]

### B. The Appeals Commission Is Not a Party to Appeals from Its Decisions to this Court.

The appeals commission appeared in this appeal, asserting that it is a party before this

2. *Brown v. Patriot Maint., Inc.,* 99 P.3d 544, 548 (Alaska 2004) (citing *Handley v. State,* 838 P.2d 1231, 1233 (Alaska 1992)).

3. *See Alaska Pub. Interest Research Group v. State,* 167 P.3d 27, 36 (Alaska 2007).

4. *See, e.g., Konecky v. Camco Wireline, Inc.,* 920 P.2d 277, 280 (Alaska 1996); *Underwater Constr., Inc. v. Shirley,* 884 P.2d 150, 152–53 (Alaska 1994); *see also Arnesen v. Anchorage Refuse, Inc.,* 925 P.2d 661, 664 n. 4, 666 n. 12 (Alaska 1996) (applying de novo review to interpretation of word "job" in former AS 23.30.041 and reasonable basis review to tax dependency determinations); *Kirby v. Alaska Treatment Ctr.,* 821 P.2d 127, 128, 129 n. 5 (Alaska 1991) (applying reasonable basis standard to question of eligibility for rehabilitation benefits and de novo review to applicability of presumption of compensability to vocational rehabilitation claims).

5. *See, e.g., George Easley Co. v. Estate of Lindekugel,* 117 P.3d 734, 740 (Alaska 2005); *Meek v. Unocal Corp.,* 914 P.2d 1276, 1278 (Alaska 1996); *Rydwell v. Anchorage Sch. Dist.,* 864 P.2d 526, 528 (Alaska 1993).

6. *Alaska Pub. Interest Research Group,* 167 P.3d at 34.

7. AS 23.30.008(a); *Alaska Pub. Interest Research Group,* 167 P.3d at 41, 45.

8. *See Ogden v. State,* 395 P.2d 371, 372 (Alaska 1964) (declining to establish rule of law on matter not in actual controversy in case).

9. *See generally Zeigler Coal Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor,* 326 F.3d 894, 897 (7th Cir.2003); *Pa. Tidewater Dock Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor,* 202 F.3d 656, 660 (3d Cir.2000) (quoting *Janusziewicz v. Sun Shipbuilding & Dry Dock Co.,* 677 F.2d 286, 290 (3d Cir.1982)); *Port of Portland v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor,* 932 F.2d 836, 838 (9th Cir.1991).

court. It filed an appellee's brief, as did ACS and its insurer, Liberty Mutual Insurance Company. At oral argument before us, the appeals commission relied on court rules governing appeals to the superior court to support its contention that it is a party.

■ We hold that the appeals commission is not a party to appeals from its decisions to this court. In appeals to the superior court, administrative agencies are parties to the appeal under court rules.[10] If one party appeals the superior court's decision in an administrative appeal to this court, all the other parties to the superior court appeal are treated as appellees here.[11] Appeals from the appeals commission are heard directly by this court, bypassing the superior court.[12] No statute or court rule authorizes the ap-

peals commission to be a party to an appeal from its decisions to this court.

The Alaska Workers' Compensation Act provides that the director of the Division of Workers' Compensation may be a party to an appeal to this court.[13] The act permits the director to intervene in appeals commission proceedings and to file appeals if a board order concerns unsettled legal issues and "a party in interest" is unrepresented.[14] The appeals commission must serve the director with its decisions.[15] The director may ask the appeals commission to reconsider a decision, even if the director was not previously a party.[16] These provisions suggest that the legislature intended the director or the Division of Workers' Compensation itself, when it is a party to the appeals commission proceed-

**10.** Alaska R.App. P. 602(h) (stating that agency is appellee in administrative appeal).

**11.** Alaska R.App. P. 201 (defining "trial court" as either district or superior court); Alaska R.App. P. 204(g) (stating that all parties in trial court are parties to appeal).

**12.** AS 23.30.129(a) states:

Notwithstanding the provisions of AS 44.62.560, orders of the commission may not be appealed to the superior court. Consistent with AS 22.05.010(b), final decisions of the commission may be appealed to the supreme court, and other orders may be reviewed by the supreme court as provided by the Alaska Rules of Appellate Procedure.

**13.** AS 23.30.127(a), .129(a), .395(15). Subsection .127(a) provides:

A party in interest may appeal a compensation order issued by the board to the commission within 30 days after the compensation order is filed with the office of the board under AS 23.30.110. The director may intervene in an appeal. If a party in interest is not represented by counsel and the compensation order concerns an unsettled question of law, the director may file an appeal to obtain a ruling on the question by the commission.

**14.** AS 23.30.127(a).

**15.** AS 23.30.128(e) states:

Within 90 days after written briefing on the appeal is completed or oral argument is held, whichever is later, the commission shall issue a decision in writing. The decision must contain a concise statement of reasons for the decision, including findings of fact, if required, and conclusions of law. The commission shall serve each party and the director with a copy of the decision. Appeals may be expedited for

good cause by the commission. Unless reconsideration is ordered under (f) of this section, a decision under this subsection is the final commission decision.

**16.** AS 23.30.128(f) states:

A party or the director may request reconsideration of a decision issued under (e) of this section within 30 days after the date of service shown in the certificate of service of the decision. The request must state specific grounds for reconsideration. Reconsideration may be granted if, in reaching the decision, the commission (1) overlooked, misapplied, or failed to consider a statute, regulation, court or administrative decision, or legal principle directly controlling; (2) overlooked or misconceived a material fact; (3) misconceived a material question in the case; or (4) applied law in the ruling that has subsequently changed. The panel of the commission hearing the request for reconsideration shall consist of the same members of the panel that issued the decision. The commission may issue an order for reconsideration of all or part of the decision upon request of a party or the director. Reconsideration is based on the record, unless the commission allows additional argument. The power to order reconsideration expires 60 days after the date of service, as shown on the certificate of service, of a decision issued under (e) of this section. If the commission does not issue an order for reconsideration within the time allowed for ordering reconsideration, a request for reconsideration is considered denied. If reconsideration is ordered, the commission shall issue a decision within 30 days after the close of the record on reconsideration. The commission shall serve each party in the case with a copy of the decision upon reconsideration. The decision upon reconsideration is the final commission decision.

ing, to represent the executive branch in appeals to this court when necessary.[17] The legislature, however, said nothing authorizing the appeals commission to be a party on appeal to this court, or implying that the appeals commission may participate as a party in appeals taken from its own decisions. Moreover, the appeals commission, as an adjudicatory body, has no more inherent interest or stake in defending its orders than would a superior court in an appeal from a superior court judgment.[18] We therefore hold that the appeals commission is not a party to appeals from its decisions to this court.

### C. Dr. Barrington Should Have Been Joined as a Party or Should Have Received Notice of the Proposed Settlement.

Dr. Barrington argues that due process required that he be joined as a party or be given notice of the impending settlement before the board approved it. He contends that he had a right to bring an independent claim and, because Williams had no authority to act on his behalf, that the settlement could not extinguish his claim. ACS responds that Dr. Barrington could have joined himself before the settlement, but did not. It contends that Williams could accept payment for Dr. Barrington's bill and could, without notice to him, waive Dr. Barrington's ability to be paid directly by ACS. The appeals commission

agreed with ACS that Williams could completely discharge ACS's liability without notice to Dr. Barrington. Construing the Alaska Workers' Compensation Act as permitting Dr. Barrington to sue Williams in court for payment for the treatment he provided, the appeals commission reasoned that Dr. Barrington's due process rights were not violated. We conclude that the board should have joined Dr. Barrington as a party to Williams's claim before it approved the settlement. Because the proposed settlement potentially foreclosed Dr. Barrington's ability to recover payment for his services, due process required notice to or joinder of Dr. Barrington before approval.

### 1. The board's joinder regulation

Dr. Barrington argued before the board that he should have been joined as a party to Williams's case because he had a right to relief arising out of Williams's claim. The board rejected his argument without analysis. The appeals commission looked at whether Dr. Barrington had to be joined as a party and decided that AS 23.30.030(4), which authorizes healthcare providers to file claims in their own names, and 8 Alaska Administrative Code (AAC) 45.040, the board's joinder regulation, did not "compel the employee to join every creditor who may have provided services or treatment of the workers' compensation injury."[19] In essence, the appeals

**17.** The division can ask the board to issue a stop-work order or assess a penalty against an employer for failing to have workers' compensation insurance or other required security. AS 23.30.080(d)–(f).

**18.** *See Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs, Dep't of Labor,* 519 U.S. 248, 265, 117 S.Ct. 796, 136 L.Ed.2d 736 (1997) (deciding that in "split-function" system under Longshore and Harbor Workers' Compensation Act, office of workers' compensation programs rather than Benefits Review Board was proper administrative agency to be named as respondent in appeal under Federal Rules of Appellate Procedure).

**19.** 8 AAC 45.040 (2004) provides, in part:

(a) Except for a deceased employee's dependent or a rehabilitation specialist appointed by the administrator or chosen by an employee in accordance with AS 23.30.041, a person other

than the employee filing a claim shall join the injured employee as a party.

(b) Except for a rehabilitation specialist appointed by the administrator or chosen by the employee in accordance with AS 23.30.041, a person who files a claim must first prove a compensable injury to be eligible for benefits, or the opposing party must stipulate to or admit facts from which the board can find the employee's injury is compensable.

(c) Any person who may have a right to relief in respect to or arising out of the same transaction or series of transactions should be joined as a party.

. . . .

(f) Proceedings to join a person are begun by

(1) a party filing with the board a petition to join the person and serving a copy of the petition, in accordance with 8 AAC 45.060, on the person to be joined and the other parties; or

commission determined that Dr. Barrington and Williams had identical interests and that Williams could therefore represent Dr. Barrington's interests adequately before the board.

■ We agree with the appeals commission that AS 23.30.030(4) and 8 AAC 45.040 do not require joinder of every healthcare provider in every case. But we conclude that they required joinder of Dr. Barrington because he potentially had a right to relief, Williams could not adequately advocate for him, and his absence affected his ability to protect his interest.

Dr. Barrington's assertion that he had a right to bring an independent claim is rooted in the language of AS 23.30.030(4), which states in part that a workers' compensation insurer "will promptly pay to the person entitled to them the benefits conferred by this chapter" and that a workers' compensation insurance policy "is a direct promise by the insurer to the person entitled to physician's fees ... and is enforceable in the name of that person."[20] We have interpreted this subsection to mean that an employer is "directly liable to health-care providers for treatment of work-related injuries."[21] Dr. Barrington reasons that because he provided medical services to Williams for a work-related injury, ACS had a direct liability to him

that the board could not extinguish without giving him notice or an opportunity to be heard. ACS denies that Dr. Barrington had an independent claim against it and denies that his services were work related.

The board decided that Williams had contractually waived payment for Dr. Barrington's services in the settlement and that Dr. Barrington's recourse was "within the civil courts." The appeals commission construed subsection .030(4) as permitting healthcare providers to file claims in their own names, but determined that "the real party in interest is the employee, not the provider." It decided that Dr. Barrington was not a "party in interest" before he filed his claim.

■ There can be more than one real party in interest in a given lawsuit or claim.[22] Whether a person is a real party in interest under the Alaska Civil Rules depends on whether he or she has a substantive right to bring a claim.[23] No one disputes that Dr. Barrington could have filed a workers' compensation claim in his own name before the settlement and joined Williams as a party to his claim. Had he done so, Dr. Barrington's claim presumably would have been joined with Williams's, he would have been a party, and he would have had to consent to a settle-

(2) the board or designee serving a notice to join on all parties and the person to be joined.
. . . .
(k) If claims are joined together, the board or designee will notify the parties which case number is the master case number. After claims have been joined together,
(1) a pleading or documentary evidence filed by a party must list the master case number first and then all the other case numbers;
(2) a compensation report, controversion notice, or a notice under AS 23.30.205(f) must list only the case number assigned to the particular injury with the employer filing the report or notice;
(3) documentary evidence filed for one of the joined cases will be filed in the master case and the evidence will be considered as part of the record in each of the joined cases; and
(4) the original of the board's decision and order will be filed in the master case file, and a copy of the decision and order will be filed in each of the joined case files.
(l) After the board hears the joined cases and, if appropriate, the division will separate the case files and will notify the parties. If the joined case files are separated, a pleading or documentary evidence filed thereafter by a party must list only the case number assigned to the particular injury with the employer filing the pleading or documentary evidence.

20. AS 23.30.030(4). AS 23.30.395(26) defines "medical and related benefits" as including "physicians' fees, ... as may reasonably be required which arise[] out of or [are] necessitated by an injury."

21. *Sherrod v. Municipality of Anchorage*, 803 P.2d 874, 875 (Alaska 1990).

22. 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 17.10[1] (3d ed.2007). The board regulations do not use the term "real party in interest" in discussing the status of parties. 8 AAC 45.040 (2004). We use the term only because the appeals commission used the term.

23. *Burns v. Anchorage Funeral Chapel*, 495 P.2d 70, 72 (Alaska 1972).

ment that affected his interest.[24] From this, we conclude that Dr. Barrington had a potential right to relief that arose from Williams's claim.

By regulation, in board proceedings a person other than the injured worker "shall join" the employee as a party.[25] Unlike the Alaska Civil Rules, board regulations do not otherwise clearly distinguish between permissive and compulsory joinder.[26] 8 AAC 45.040(c) states that a person who "may have a right to relief in respect to or arising out of the same transaction ... should" be joined. This subsection seems to give the board some discretion in deciding whether to allow or require joinder. But the board's discretion is not absolute; in this case, Dr. Barrington was a necessary party whose absence, as we will see, violated due process.[27]

Dr. Barrington could have become a party to Williams's claim before settlement either by filing a claim in his own name and joining his claim to Williams's, or by being joined.[28] A physician or other non-party may not intervene in an existing board case; instead, 8 AAC 45.040(f) states that proceedings to join a person are begun either by a party filing a petition to join the person or by the board serving a notice to join the person.[29] ACS is incorrect in implying that Dr. Barrington could be joined only if he took affirmative steps to be joined as a party. ACS could

have joined Dr. Barrington as a party, but did not.

The regulation lists factors the board is to consider in deciding whether to join someone.[30] For purposes of Dr. Barrington's case, two of the factors are of particular importance: whether the person's presence "is necessary for complete relief and due process among the parties"; and whether the person's absence "may affect the person's ability to protect an interest," or subject a party to a substantial risk of incurring inconsistent obligations.[31] These factors are substantially similar to those in Alaska Civil Rule 19(a), which addresses compulsory joinder.[32]

■ The decision whether joinder is necessary in a civil suit is a practical one.[33] Our analysis in this case turns on practical considerations as well. In a workers' compensation case, there is often a unity of interest between the employee and her physicians. The employee wants benefits, including future medical benefits, and will present providers' past bills to the board so it can order payment. Here, Dr. Barrington testified that Williams's attorney assured Dr. Barrington that the attorney would present Dr. Barrington's bill to the board, and the attorney indeed filed a copy of the bill with the board. In most cases, joinder of all physicians who have provided treatment would be

**24.** 8 AAC 45.040(a), (k) (2004); 8 AAC 45.160(b) (2004) (requiring that all settlement agreements "be signed by all parties to the action").

**25.** 8 AAC 45.040(a) (2004).

**26.** 8 AAC 45.040 (2004); Alaska R. Civ. P. 17, 19, 20.

**27.** Alternatively, the board could have given Dr. Barrington notice of the proposed settlement, allowed him adequate time to file his own claim, and joined his claim to Williams's existing claim. *See* 8 AAC 45.040(k)-(*l*) (2004) (providing for joinder of claims).

**28.** 8 AAC 45.040 (2004). This regulation does not specify how to join claims or when joinder of claims is permitted or required. 8 AAC 45.040(k) (2004).

**29.** 8 AAC 45.040(f) (2004).

**30.** 8 AAC 45.040(j) (2004). The factors are:

(1) whether a timely objection [to joinder] was filed in accordance with (h) of this section;
(2) whether the person's presence is necessary for complete relief and due process among the parties;
(3) whether the person's absence may affect the person's ability to protect an interest, or subject a party to a substantial risk of incurring inconsistent obligations;
(4) whether a claim was filed against the person by the employee; and
(5) if a claim was not filed as described in (4) of this subsection, whether a defense to a claim, if filed by the employee, would bar the claim.

**31.** 8 AAC 45.040(j)(2)-(3) (2004).

**32.** *Compare* Alaska R. Civ. P. 19(a), *with* 8 AAC 45.040(j)(2)-(3) (2004).

**33.** *See* MOORE, *supra* note 22, § 19.02[2][c] (noting that Federal Civil Rule 19 "defines absentees who are needed for a just adjudication in very practical terms").

"a spectacularly wasteful expenditure of resources and effort."[34] But in some cases the interests of the employee and the healthcare provider differ sufficiently that the employee is adverse to a medical provider or cannot adequately represent the provider's interest.[35]

The interests of the healthcare provider and the claimant diverged in this case. No one disputes that Williams and ACS agreed to settle the case for an amount they knew was inadequate to pay all of Williams's outstanding medical bills. No one gave the healthcare providers notice of the pending settlement or tried to join them so they could introduce evidence that their services were reasonable and necessary and therefore payable by the employer.[36] The board did not try to join them either, but it is unclear whether the board was aware of the lack of unity of interests between Williams and her providers.

ACS asserts that the board knew that Williams was settling for an amount that would not cover her bills, but we cannot determine the accuracy of this assertion from the appellate record. The board's awareness of any difference between the amount of the settlement and the total of the unpaid provider bills is relevant to whether Williams was able to protect Dr. Barrington's interest and whether the settlement was in Williams's best interest.[37]

The board held no hearing and made no specific findings why the settlement was in Williams's best interest. Settlements that waive medical benefits are "presumed not [to be] in the employee's best interest, and will not be approved absent a showing by a preponderance of the evidence that the waiver is in the employee's best interest."[38] This settlement agreement waived medical benefits, so it was presumed not to be in Williams's best interest. ACS asserts that the board was aware that Williams had outstanding medical bills exceeding the settlement amount, but the language of the settlement is ambiguous. The agreement states or implies that all providers will be paid. Thus, the agreement first states, "Except as otherwise provided in this Agreement, the parties agree that the employer has paid all compensation and medical benefits which are due as of the date the employee signs this Settlement Agreement." It also states that the settlement amount "reflects payment of disputed past medical expenses as well as a waiver of future medical expenses." It then provides that "the parties anticipate that the settlement monies are more than sufficient to cover the costs of any future medical treatment that may be necessary." The agreement never specifies the amount of Williams's unpaid bills or which past medical expenses were disputed.[39] The board could reasonably have concluded from the quoted language that ACS was paying Williams enough money to cover all of her past medical bills in addition to some future medical treatments. Given these provisions in the agreement, the board may not have been aware that Williams's and Dr. Barrington's interests diverged; the agreement's quoted representations may have influenced the board's assessment of Williams's best interest as well.

34. *Univ. of Mass. Mem'l Med. Ctr., Inc. v. Christo-doulou,* 180 N.J. 334, 851 A.2d 636, 646 (2004).

35. *See, e.g., Nakasone v. Ichiban Japanese Rest.,* AWCB Decision No. 00–0039 (March 8, 2000) (joining healthcare providers to determine whether employee was entitled to reimbursement for treatments); *Hathaway v. State, Dep't of Corr.,* AWCB Decision No. 98–0094 (April 16, 1998) (holding that board had jurisdiction to order healthcare provider to reimburse employee for excess treatment under AS 23.30.095(c)).

36. *See Bockness v. Brown Jug, Inc.,* 980 P.2d 462, 466–67 (Alaska 1999) (holding employer liable only for reasonable and necessary medical care).

37. ACS asserted in oral argument before us and at the hearing on Dr. Barrington's claim that some of the chiropractic bills in Williams's claim were for services provided by her husband. If this assertion is accurate, it could provide further evidence that Williams's and Dr. Barrington's interests diverged.

38. 8 AAC 45.160(e) (2004).

39. The board has refused to approve a settlement when the parties supplied insufficient details about an employee's unpaid past medical expenses. *See Lindekugel v. George W. Easley Co.,* AWCB Decision No. 91–0033 (Feb. 6, 1991); *see also* 8 AAC 45.160(c) (2004) (requiring detailed statement of parties' claims).

Dr. Barrington's absence from the board proceeding affected his ability to protect his interest. The appeals commission determined that Dr. Barrington's common law cause of action against Williams survived the settlement, but text of the pertinent statute does not seem to support this conclusion. Alaska Statute 23.30.097(f) states, "An employee may not be required to pay a fee or charge for medical treatment or service provided under this chapter." [40] The appeals commission construed subsection .097(f) as applying "while the treatment is not controverted (or a controverted claim has not been decided by the board)." The parties appear to agree that if the board determines that a claim is compensable, subsection .097(f) prohibits a healthcare provider from bringing a civil action against an injured worker for covered services. The parties agree that, if the board determined that an injury was not work related, subsection .097(f) would not apply because medical services or treatment would not have been provided under the workers' compensation act. But no board decision establishes that Dr. Barrington's services were not work related. Absent a board determination that the injuries were not work related, subsection .097(f) could well foreclose Dr. Barrington's ability to sue Williams for payment.

The appeals commission did not determine whether a settlement "decides" a controverted claim and, if it does, how it resolves the claim. Language in the commission's decision suggests that a settlement dismisses a workers' compensation claim. Although an approved settlement discharges an employer's liability, it is enforceable as a board order or award, so the settlement does not "dismiss" a claim.[41] Approval of the settlement here could be construed as deciding that Williams had a covered injury, for there was no other reason for ACS to pay her benefits. If so, Williams's pre-settlement medical care would have been, in the words of subsection .097(f), "provided under this chapter," and Dr. Barrington could not sue her for his unpaid services.[42]

Apart from the statutory bar, the settlement may also prevent Dr. Barrington from establishing that his services were reasonable and necessary. An employer is only responsible for paying for an injured employee's reasonable and necessary medical expenses.[43] Williams had many unpaid medical bills at the time of the settlement; information Williams later provided the bankruptcy court suggests that the unpaid total was about twice the amount of the workers' compensation settlement. According to ACS, the parties intended Williams to use the settlement money to pay these bills. Some of Williams's medical expenses were for chiropractic care that exceeded the board's frequency standards; the excess treatments were presumptively not reasonable and necessary.[44] The board, in approving the settlement, in effect let Williams decide which treatments were reasonable and necessary. By not giving Dr. Barrington notice of the proposed settlement and an opportunity to present his claim, the board denied him the opportunity to show that the medical care he provided was reasonable and necessary and that other medical care was not.

Failure to join Dr. Barrington also made it harder for the board to provide complete relief to the parties and subjected ACS to the

**40.** AS 23.30.097(f) was enacted in 2005, after the settlement was approved. Ch. 10, § 36, FSSLA 2005. A similar provision, former AS 23.30.095(f), was in effect when the settlement was signed and approved. We assume that the minor difference in language between the two statutes is unimportant, as no one has discussed it.

**41.** AS 23.30.012(b); *see Olsen Logging Co. v. Lawson,* 856 P.2d 1155, 1158 (Alaska 1993).

**42.** Because Williams waived future medical benefits, any medical care she received after the board approved the settlement would not be pro-

vided under the workers' compensation act. AS 23.30.097(f). Dr. Barrington's claim concerns services provided before the parties entered into the proposed settlement and before the board approved it. ACS paid Williams $7,500 for medical services, including Dr. Barrington's services, she received before the settlement agreement was signed. This payment implicitly treated Dr. Barrington's services as covered under subsection .097(f).

**43.** *Bockness v. Brown Jug, Inc.,* 980 P.2d 462, 466–67 (Alaska 1999).

**44.** AS 23.30.095(c); 8 AAC 45.082 (2004).

risk of incurring inconsistent obligations.[45] As this appeal demonstrates, ACS was not afforded complete relief by the settlement. The board's failure to join Dr. Barrington also exposed Williams and ACS to litigation regarding payment for Dr. Barrington's services. Depending on the outcome of litigation, ACS was at risk of inconsistent obligations.

The board has interpreted 8 AAC 45.040 as permitting it to join persons on its own.[46] Because the settlement was ambiguous, the board erred in failing to join Dr. Barrington when there was a real risk that he would be unable to protect his interest and that the existing parties might not be afforded complete relief.

## 2. Dr. Barrington's due process claim

 We have determined that due process applies to administrative proceedings.[47] We have adopted the three-part balancing test from *Mathews v. Eldridge* to determine whether administrative proceedings satisfy due process.[48] This test takes the following into account:

> [f]irst, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the [probable] value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[49]

We first consider Dr. Barrington's private interests. He asserts two: his interest in

being paid for his services, and his procedural interest in having the board hear his claim. The appeals commission decided that Dr. Barrington only had an economic interest and that this interest was represented by Williams. Because Dr. Barrington had an independent right to file a claim and Williams could not adequately represent his interest, we conclude that Dr. Barrington had a cognizable property interest in filing an independent claim and that this interest was entitled to due process protection.[50]

The second step in our due process analysis is evaluating the risk of erroneous deprivation using current procedures and the benefits of additional process. Dr. Barrington asserts that the risk of erroneous deprivation using the board's procedures is one hundred percent; ACS counters that Dr. Barrington had the opportunity to join his claim before the settlement and slept on his rights. We disagree with ACS that Dr. Barrington delayed unduly in filing his claim. Given the assurance he received from Williams's attorney, who then filed Dr. Barrington's bill with the board, Dr. Barrington initially reasonably relied on Williams to protect his interest. The record does not reflect precisely when Dr. Barrington became aware of the settlement, but he filed his own claim about two months after the board approved the settlement and within six weeks after Williams filed for bankruptcy. The record does not establish that Dr. Barrington learned, in time to file his own claim and seek joinder before the board considered and approved the settlement, that the proposed settlement would not fully compensate him for his services.

---

**45.** *See* 8 AAC 45.040(j) (2004). Dr. Barrington asserts that ACS took the risk of incurring inconsistent obligations when it failed to join him, but the board also has a responsibility to assess whether a person's presence is necessary.

**46.** *Weatherby v. N. Air Cargo, Inc.*, AWCB Decision No. 00–0241 at 6–7 (Nov. 22, 2000) (interpreting AS 23.30.135 and 8 AAC 45.040 as giving board authority to join parties to claims); *Wynne v. State*, AWCB Decision No. 99–0219 at 5 (Nov. 1, 1999) (finding that board had affirmative duty to join former employer even if employee failed to file claim against it); 8 AAC 45.040(f) (2004).

**47.** *Brandal v. State, Commercial Fisheries Entry Comm'n*, 128 P.3d 732, 738 (Alaska 2006) (citing

*State, Dep't of Health & Soc. Servs. v. Valley Hosp. Ass'n*, 116 P.3d 580, 583 (Alaska 2005)).

**48.** *Valley Hosp. Ass'n.*, 116 P.3d at 583 (citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

**49.** *Jurgens v. City of North Pole*, 153 P.3d 321, 331 (Alaska 2007) (citing *Mathews*, 424 U.S. at 335, 96 S.Ct. 893).

**50.** *See Patrick v. Lynden Transp., Inc.*, 765 P.2d 1375, 1378 (Alaska 1988) (noting that unlitigated claim is property interest subject to due process).

In the abstract, board regulations appear adequate to protect the due process interests of healthcare providers in board proceedings. But the manner in which the board applied the regulations here subjected Dr. Barrington to the risk that he would be unable to obtain payment for his services. When a judgment has the effect of destroying a person's rights, failure to join a person to the action from which the judgment arose may amount to a violation of due process.[51] Because AS 23.30.097(f) could foreclose Dr. Barrington's ability to sue Williams, or at least make collection problematic even without the complication of Williams's bankruptcy, due process required his joinder.

The final step in our analysis is determining the government's interest. The appeals commission expressed concern that compulsory joinder of healthcare providers would impede settlement and crowd workers' compensation claims. ACS echoes these fears and argues that additional process would unduly burden employers and put past settlements at risk. But the board and appeals commission decisions in this case give healthcare providers an incentive to file independent claims early in a workers' compensation case or risk having their right to payment compromised without prior notice. The significant disruption caused by even infrequent attempts to set aside settlements would seem to counterbalance any burden that might be created by additional process and the possibility of joining healthcare providers.

The board may have an additional administrative burden in joining medical providers in some claims. The board will have to examine settlements to be sure that healthcare providers' claims are not foreclosed without notice. But we are not convinced that the administrative burden on the board will be great: board regulations already create a presumption that settlements waiving medical benefits are not in an employee's best interest, and the workers' compensation act requires the board to review settlements that waive future medical benefits.[52] In addition,

board regulations already permit providers to file their own claims.[53] We do not hold that parties need to notify or join healthcare providers in all circumstances. But when, as here, a settlement is intended to pay for or compromise past medical expenses without requiring payment directly to the providers, the board must provide notice and an opportunity to be heard to providers whose claims will be extinguished by the settlement. The board should either begin proceedings to join providers or give them adequate advance notice of the proposed settlement so they can file their own claims. Because board regulations permit the board to consider the objections of the person whose joinder is sought, providers who do not want to become parties can object to joinder.[54] If, as ACS suggests, most healthcare providers are willing to forgo payment in such cases, they can notify the board that they waive their right to payment and ask the board not to join them. But providers who wish to present their claims must be given the opportunity to do so.

## IV. CONCLUSION

Because we are not able to determine whether the board was aware of the disparity between the amount of the settlement and the unpaid provider bills and because the board proceedings effectively foreclosed Dr. Barrington's right to present his claim, we REVERSE the decisions of the board and the appeals commission and REMAND to the appeals commission with instructions to remand to the board for further proceedings consistent with this opinion.

MATTHEWS, Justice, not participating.

**51.** 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1602 (3d ed.2001).

**52.** AS 23.30.012(b); 8 AAC 45.160(e) (2004).

**53.** 8 AAC 45.040(a) (2004).

**54.** 8 AAC 45.040(f), (j) (2004).