*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ARCTEC SERVICES, an ASRC Company, and ASRC SERVICE CENTER, | ) ) ) | Supreme Court No. S-14457 |
| | ) | Alaska Workers' Compensation |
| Appellants, | ) | Appeals Commission No. 10-028 |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| GAYLE CUMMINGS, | ) | No. 6754 – March 8, 2013 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission, Laurence Keyes, Commission Chair.

Appearances: Robert J. Bredesen, Russell, Wagg, Gabbert & Budzinski, Anchorage, for Appellants. Michael J. Wenstrup, Law Office of Michael J. Wenstrup, LLC, Fairbanks, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Carpeneti, Justice, not participating.]

MAASSEN, Justice.

I.      INTRODUCTION

        While receiving workers' compensation benefits for an injury, an employee periodically endorsed benefit checks that included a certification that she had "not

worked in any employment or self-employment gainful or otherwise." Her employer obtained surveillance videos of her activities at an herb store owned by her boyfriend and filed a petition with the Workers' Compensation Board alleging that she had fraudulently misrepresented her employment status for the purpose of obtaining benefits. The Board denied the petition, finding credible the employee's testimony that she did not consider her activities to be work that needed to be reported. On appeal, the Alaska Workers' Compensation Appeals Commission concluded that the Board erred in determining that the employee had not "knowingly" misrepresented her work status, but it affirmed the Board's denial of the petition on the alternative ground that the employer had not shown the requisite causal link between the allegedly fraudulent check endorsements and the payment of benefits.

We hold that the Commission erred in its interpretation of the "knowingly" element of the test for fraud. We nonetheless affirm the Commission's decision because, based on the Board's binding credibility determination, the employee's statements were not knowingly false and therefore not fraudulent.

## II.     FACTS AND PROCEEDINGS

Gayle Cummings lived in Fairbanks and worked as a cook for ARCTEC Services at Clear Air Force Station from 1998 until 2006. In August 2006 she hurt her neck, back, and hip while lifting a grill cover. She went to see the medic at Clear, then received treatment from a chiropractor in Fairbanks. ARCTEC accepted that the claim was compensable and began paying workers' compensation benefits. Cummings continued to receive chiropractic treatment.

In January 2007, Cummings underwent an employer's medical examination (EME) with Barry Matthisen, a chiropractor. Dr. Matthisen opined that her treatment to that point had been reasonable and necessary but that she was not yet medically stable. Cummings's treating chiropractor referred her to Advanced Pain Centers, where she saw

several medical doctors. One of them rated Cummings in July 2007 as having a five percent permanent partial impairment as a result of the injury.

Cummings applied for reemployment benefits, waiving her right to receive job dislocation benefits instead.[1] She developed a reemployment plan with Dan LaBrosse, a rehabilitation counselor with Compensation Risk Consultants (CRC). She told him that her long-term goal was to open a store that sold herbal remedies. They were unable to develop this option in Cummings's reemployment plan, however, due to the lack of labor market information about it; LaBrosse did not think the reemployment benefits administrator (RBA) would approve the plan without such information. Given Cummings's interests they also considered the occupations of naturopathic doctor and nutritionist, ultimately excluding these options due to the length of training,[2] need to relocate, and cost.[3] The reemployment plan submitted to the RBA was limited to training as a food services manager. According to LaBrosse, the plan would give Cummings some background in business management, which she could later use in her preferred occupation of selling herbal remedies.

Cummings's reemployment plan required that she attend classes at the University of Alaska, Fairbanks. She went to one day of class in early 2008, but her doctor excused her from further attendance after she experienced a flare-up of her neck

---

[1]    In 2005 the legislature provided job dislocation benefits as an alternative to reemployment benefits for any worker with a permanent partial impairment greater than zero as a result of a work-related injury. Ch. 10, § 19, FSSLA 2005. Because Cummings's rating was five percent, she would have been eligible for $5,000 in job dislocation benefits. *See* AS 23.30.041(g)(2)(A).

[2]    AS 23.30.041(k) limits reemployment plans to two years.

[3]    AS 23.30.041(*l*) limits the cost of a reemployment plan to $13,300.

pain while riding the campus shuttle-bus. Her reemployment plan was medically suspended, and she again began receiving benefits for temporary total disability.

In November 2006, several months after her injury but about a year before she began the reemployment process, Cummings had received a business license as a sole proprietor in the name of Alaska Herb USA. She allowed the license to expire a month later. Cummings's boyfriend, Larry Schander, used the same business name in November 2007 to obtain a business license as a sole proprietor. Schander testified later that he had planned to wait until retirement to open a business with Cummings selling herbs, but after she was injured he felt that he "had to get her out of the house before she committed suicide." The two of them rented a storefront in the Regency Court Mall in Fairbanks.

Cummings spent a considerable amount of time at the store, assisting customers and selling herbs. She did not keep time records and was not paid for her work, and the store was not profitable. Both Cummings and Schander testified that the store did not always keep regular hours and that Cummings could choose not to work if she did not feel like it. Cummings and Schander shared responsibility for the store: she kept track of inventory and sales, and he took the information to an accountant or bookkeeper. Both Schander and Cummings had access to the store's bank account.

Cummings also bought and sold herbs online through a website with the same name as the store. She testified that she purchased herbs for the store through the website, used herbs from the store to fill on-line orders, and used money from on-line sales to buy items for the store.

Cummings testified that she considered her work at the store to be a hobby. She testified that she spent much of her time at the store in activities that were not business-related, such as assembling care packages for troops in Iraq and Afghanistan and sending letters and emails to soldiers to boost their morale. She also testified that

she was not the only person who staffed the store: her son, who was then in his late teens, worked there periodically, as did a friend. Schander testified that he sometimes worked there too.

ARCTEC hired a private investigator for Cummings's case in August 2007, several months before Schander opened the store. The private investigator looked into Cummings's background and conducted surveillance several times over the next year. He observed Cummings working at Alaska Herb USA in June and July 2008. He provided ARCTEC with several surveillance video clips of the store's interior, looking into the store from the common area of the mall and showing his own in-store purchase. His videos also showed Cummings assisting one other customer and using a computer in an office area; they otherwise recorded minimal activity in the store. Much of the video footage was taken outside the mall, where Cummings occasionally emerged to smoke or drink coffee.

In July 2008, ARCTEC filed a petition for a finding of fraud; it alleged that Cummings had misrepresented her work status as well as "her condition and her physical capabilities to several doctors" and sought reimbursement of past benefits, costs, and attorney's fees. ARCTEC filed a controversion notice the same day, alleging that Cummings was "working on a full time basis and thus[]is no longer entitled to time loss benefits or reemployment benefits." ARCTEC filed with the Board copies of six cancelled benefits checks Cummings had signed. Each check had a stamp with the following statement on the back: "I certify, as attested by my signature, that I have not worked in any employment or self-employment, GAINFUL OR OTHERWISE DURING THE PERIOD OF DISABILITY COVERED BY THIS CHECK."

The Board held a hearing on the fraud petition in June 2010. Witnesses included Cummings; her rehabilitation counselor, LaBrosse; the claims adjuster for ARCTEC; the private investigator; and Dr. Patrick Radecki, a physician ARCTEC had

hired to do a second EME. Schander and Dr. George Allen, Cummings's treating chiropractor, testified by deposition. At the end of the hearing, ARCTEC narrowed its request to seek only reimbursement of those benefits paid while Cummings was working at the herb store — from December 2007 through July 2008 — and agreed to waive attorney's fees and costs as long as Cummings agreed not to pursue her workers' compensation claim any further.

The Board denied ARCTEC's petition. The Board found first that Cummings had not misrepresented her physical capabilities to doctors during the course of the claim. It noted that the only doctor who thought Cummings was exaggerating her symptoms was Dr. Radecki, whose testimony the Board gave little weight because he had never examined Cummings but rather had formed his opinion based on a review of medical records and surveillance videos.

The Board found Cummings to be credible when she testified that she considered her activities at the store to be volunteer work that she did not need to report. The Board therefore concluded that Cummings had not knowingly made false or misleading statements for the purpose of obtaining workers' compensation benefits. The Board found in the alternative that even if Cummings had knowingly made false statements, ARCTEC had failed to prove that these statements were a causal factor in its payment of benefits.

ARCTEC appealed only that part of the decision related to the alleged overpayment of benefits during the time Cummings worked at the store. It argued that it had proven both a knowing misrepresentation and justifiable reliance as matters of law. It argued that the Board should have used an objective standard to evaluate Cummings's claim that she considered her activities a hobby: it contended that her "rationalizations" had to be "objectively reasonable."

The Commission agreed with ARCTEC that Cummings had knowingly misrepresented her employment status. It said that "Cummings' credibility is not the issue here" and framed the issues instead as "1) whether her belief that her volunteer work was not employment was objectively reasonable, and 2) whether the circumstances that she credibly testified to legally constitute[d] a violation of . . . AS 23.30.250(b)." Noting that this court had not construed "knowingly" for purposes of workers' compensation fraud cases, the Commission cited one of its earlier decisions, related to the deadline for requesting a hearing in AS 23.30.110(c), for the rule that "a subjectively held belief of a workers' compensation claimant must be objectively reasonable." The Commission decided that Cummings's belief that she did not have to report her time in the store and her belief that she was a volunteer were not objectively reasonable and that the Board therefore legally erred when it found that she had not "knowingly" misrepresented her employment status.

The Commission did, however, agree with the Board's alternative holding on causation. It cited the adjuster's testimony that the purpose of the certification on the benefits checks was to remind claimants about the need to report work, and it observed that there was no evidence that the adjuster actually looked at the backs of the cancelled checks before issuing more checks. The Commission therefore decided that ARCTEC had not met its burden of proving that any misrepresentation was a causal factor in the continuing payment of benefits. ARCTEC appeals.

III. **STANDARD OF REVIEW**

In workers' compensation appeals, we directly review the decision of the Commission.[4] When the issue presented is one of "statutory interpretation requiring the application and analysis of various canons of statutory construction," we apply our

---

[4] *Shehata v. Salvation Army*, 225 P.3d 1106, 1113 (Alaska 2010) (citing *Barrington v. Alaska Commc'ns Sys. Grp., Inc.*, 198 P.3d 1122, 1125 (Alaska 2008)).

independent judgment.[5]  We interpret statutes "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[6]  We "adopt 'the rule of law that is most persuasive in light of precedent, reason, and policy.' "[7] The power to determine witness credibility rests, by statute, solely with the Board.[8]

## IV.    DISCUSSION

We can affirm an administrative decision on any basis supported by the record, even if the agency did not rely on it.[9]  We do that here.  The Commission rejected the Board's conclusion that Cummings had not knowingly made a false statement, but it  affirmed the Board's denial of ARCTEC's fraud petition on grounds that ARCTEC had failed to prove causation.  We conclude that the Commission erred in its decision. We conclude that "knowingly," for purposes of fraud claims under AS 23.30.250(b), requires the subjective intent to defraud.  The Board's finding that Cummings did not subjectively believe that she was misrepresenting her employment status was a

---

[5]    *Tesoro Alaska Petrol. Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903-04 (Alaska 1987).

[6]    *Parson v. State, Dep't of Rev., Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1036 (Alaska 2008) (citing *Grimm v. Wagoner*, 77 P.3d 423, 427 (Alaska 2003)).

[7]    *Lewis-Walunga v. Mun. of Anchorage*, 249 P.3d 1063, 1067 (Alaska 2011) (quoting *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1133 (Alaska 2009)).

[8]    AS 23.30.122.

[9]    *Plumber v. Univ. of Alaska Anchorage*, 936 P.2d 163, 165 n.1 (Alaska 1997) (citing *Alaska State Emps. Ass'n v. Alaska Pub. Emps. Ass'n*, 825 P.2d 451, 458 (Alaska 1991); *Ehrlander v. State, Dep't of Transp. & Pub. Facilities*, 797 P.2d 629, 636 n.18 (Alaska 1990)).

credibility determination that, by statute, is binding on the Commission[10] and determinative of the issue of whether Cummings intended to defraud her employer. We affirm the Commission's decision on this ground and decline to reach the causation issue on which the Commission affirmed the decision of the Board.

1.    **"Knowingly" for purposes of AS 23.30.250(b) means having the subjective intent to defraud.**

This case requires that we again interpret AS 23.30.250, which authorizes both criminal and civil "[p]enalties for fraudulent or misleading acts" relating to the provision or receipt of workers' compensation benefits. Subsection (a) provides that certain conduct may render the actor both civilly liable and subject to criminal penalties for "theft by deception."[11] Subsection (b) permits the Board to order an employee to reimburse workers' compensation benefits that were fraudulently obtained. As relevant here, this subsection provides:

> If the board, after a hearing, finds that a person has obtained compensation, medical treatment, or another benefit provided under this chapter . . . by knowingly making a false or misleading statement or representation for the purpose of obtaining that benefit, the board shall order that person to make full reimbursement of the cost of all benefits obtained.[12]

---

[10]    AS 23.30.122 states, in part: "The board has the sole power to determine the credibility of a witness. A finding by the board concerning the weight to be accorded a witness's testimony, including medical testimony and reports, is conclusive even if the evidence is conflicting or susceptible to contrary conclusions." AS 23.30.128(b) states, in part, "The board's findings regarding the credibility of testimony of a witness before the board are binding on the commission."

[11]    AS 23.30.250(a).

[12]    AS 23.30.250(b).

Both subsection (a) and subsection (b) use the term "knowingly" to describe certain proscribed conduct.[13]

In *Municipality of Anchorage v. Devon*, we held that the Board's test for fraud claims "comport[ed] with the language of AS 23.30.250(b)," and we therefore adopted it.[14] Under the test, an employer alleging fraud must prove each of four elements: "(1) the employee made statements or representations; (2) the statements were false or misleading; (3) the statements were made knowingly; and (4) the statements resulted in the employee obtaining benefits."[15] In *Shehata v. Salvation Army*, we rejected the argument that AS 23.30.250(b) was intended to incorporate all elements of common law fraud, specifically justifiable reliance; we did, however, interpret the statute as requiring "a causal link between a false statement or representation and benefits obtained by the employee."[16]

---

[13] AS 23.30.250(a) authorizes civil and criminal penalties against

> [a] person who (1) knowingly makes a false or misleading statement, representation, or submission related to a benefit under this chapter; (2) knowingly assists, abets, solicits, or conspires in making a false or misleading submission affecting the payment, coverage, or other benefit under this chapter; [or] (3) knowingly misclassifies employees or engages in deceptive leasing practices for the purpose of evading full payment of workers' compensation insurance premiums.

[14] 124 P.3d 424, 429 (Alaska 2005).

[15] *Id.*

[16] 225 P.3d at 1114-15. Shehata argued that the employer could not justifiably rely on his misrepresentation that he was not working because the adjuster knew from surveillance that he was working. *Id.* at 1113-14. We agreed, noting that "[a]s a general rule, in common law fraud, a person cannot justifiably rely on a statement

(continued...)

As the Commission observed, we have not previously interpreted the "knowingly" element of the fraud test in the context of AS 23.30.250(b). The Commission decided that the question was "whether [Cummings's] belief that her volunteer work was not employment was objectively reasonable." The Commission noted its previous holding "that a subjectively held belief of a workers' compensation claimant must be objectively reasonable," citing *Providence Health System v. Hessel*.[17] At issue in *Hessel* was AS 23.30.110(c), which sets a two-year deadline for an employee to request a hearing after the employer has controverted the claim. The Commission cited cases involving the discovery rule — relevant to when a statute of limitations begins to run — and decided the Board should apply the same "reasonable person" standard when evaluating an employee's claim that he misunderstood a notice about the statutory deadline for requesting a hearing.[18]

ARCTEC asks us to adopt the Commission's "objectively reasonable" standard for "knowingly," which it argues would appropriately limit the Board's "power to essentially ignore objective and undisputed facts by spinning them away through re-characterizations." ARCTEC asks alternatively that we adopt the definition of scienter found in the Restatement (Second) of Torts, which we discussed in *Lightle v. State, Real Estate Commission*.[19] ARCTEC contends that the Restatement standard would yield the same result as the "objectively reasonable" standard in this case because Cummings

---

[16]    (...continued)
she knows to be false." *Id.* at 1114.

[17]    AWCAC Dec. No. 131 (Mar. 24, 2010), *available at* http://labor.state.ak.us/WCcomm/memos-finals/D_131.pdf.

[18]    *Id.* at 9-10, 14 and n.42.

[19]    146 P.3d 980, 983-86 (Alaska 2006).

lacked the requisite confidence about her employment status at the time she signed her disability checks.[20]

We cannot reconcile these arguments with the legislature's choice of the word "knowingly." In construing a statute, we first consider the meaning of the words used. "Technical words and phrases and those that have acquired a peculiar and appropriate meaning, whether by legislative definition or otherwise, shall be construed according to the peculiar and appropriate meaning."[21] The workers' compensation statutes do not give a context-specific definition of "knowingly,"[22] but criminal law does define it for purposes of AS 23.30.250(a), which, as noted above, criminalizes certain acts that are "knowingly" done.[23]

Before the legislature rewrote AS 23.30.250 in 1995, the statute was wholly criminal in nature and contained the mental state "wilfully."[24] In 1995, the legislature

---

[20]    "Fraudulent" as used in the Restatement refers to the maker's knowledge that his statement is untrue. *Lightle*, 146 P.3d at 983 (citing RESTATEMENT (SECOND) OF TORTS § 526 cmt. a (1977)). "A misrepresentation is fraudulent if the maker (a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies." *Id.* at 983-84 (quoting RESTATEMENT (SECOND) OF TORTS § 526 cmt. a (1977)).

[21]    AS 01.10.040(a).

[22]    *See* AS 23.30.395.

[23]    *See* AS 11.81.900(a)(2) (defining "knowingly" for purposes of criminal law).

[24]    Former AS 23.30.250 (1994) provided:

A person who wilfully makes a false or misleading statement or representation for the purpose of obtaining or denying a benefit or payment under this chapter is guilty of

(continued...)

expanded the range of activities that could constitute criminal fraud in the workers' compensation context and changed the mental state in AS 23.30.250(a), which now contains both civil and criminal sanctions, to "knowingly."[25] The legislature also added subsection (b), the subsection that permits the Board to make a finding of fraud and to order that benefits be reimbursed if it finds that the claimant obtained them by "knowingly making a false or misleading statement." While the sponsor statement observes that these amendments were intended to "broaden[] the definition of misrepresentation and give[] the Board the authority to order reimbursement of monies fraudulently obtained," the legislative history contains no discussion of the elements of fraud.[26]

Because subsection (a) of the statute imposes criminal liability, we construe its term "knowingly" in accordance with criminal law.[27] Alaska Statute 11.81.900(a)(2) provides:

> [A] person acts "knowingly" with respect to conduct or to a circumstance described by a provision of law defining an offense when the person is aware that the conduct is of that nature or that the circumstance exists; when knowledge of the existence of a particular fact is an element of an offense, that

---

[24]    (...continued)
theft by deception as defined in AS 11.46.180 and is punishable as provided in AS 11.46.120 – 11.46.150.

[25]    Ch. 75, § 11, SLA 1995.

[26]    Minutes, House Judiciary Comm., Hearing on H.B. 237, 19th Leg., 1st Sess., No. 140-249 (Mar. 31, 1995) (statement of Rep. Eldon Mulder, prime sponsor of H.B. 237).

[27]    *See Hentzner v. State,* 613 P.2d 821, (Alaska 1980) (construing AS 45.45.070, governing the sale of unregistered securities, to require that the defendant act with an "awareness of wrongdoing," as required in criminal law, where "wilful" violation could lead to criminal felony conviction).

knowledge is established if a person is aware of a substantial probability of its existence, unless the person actually believes it does not exist . . . .

The legislative history of AS 11.81.900(a)(2) shows that there was debate about whether to make "knowingly" an objective or a subjective standard; the legislative conclusion was that "the test for knowledge is a subjective one."[28] Thus "knowingly" in AS 23.30.250(a) is necessarily a subjective, not an objective, standard.

Given our "rule of statutory interpretation that the same words used twice in the same statute have the same meaning,"[29] we conclude that "knowingly" in AS 23.30.250(b) must have the same meaning that it has in subsection (a), which in turn is the same meaning that it has in criminal law. The legislative history of AS 23.30.250 does not demonstrate any intent to give "knowingly" different meanings in the two subsections of the statute. The main purpose behind subsection (b) was to provide an easier means for employers to get reimbursement of benefits paid due to employee fraud.[30] The lower standard of proof in fraud cases brought before the Board[31] and the

---

[28] Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 141, 1978 Senate Journal 1399. *See also Oram v. People*, 255 P.3d 1032, 1038 (Colo. 2011) ("The mental state of knowingly is a subjective rather than an objective standard and does not include a reasonable care standard."). In contrast, both "recklessly" and "criminal negligence" use a reasonable person standard. AS 11.81.900(a)(3)-(4).

[29] *Fancyboy v. Alaska Vill. Elec. Coop., Inc.*, 984 P.2d 1128, 1133 (Alaska 1999); *see also Jonathan v. Doyon Drilling, Inc.*, 890 P.2d 1121, 1123 (Alaska 1995).

[30] Minutes, House Labor & Commerce Comm., Hearing on H.B. 237, 19th Leg., 1st Sess., No. 480-531 (Mar. 15, 1995) (statement of Rep. Eldon Mulder, prime sponsor of H.B. 237).

[31] The standard of proof in fraud cases brought before the Board is preponderance of the evidence. *DeNuptiis v. Unocal Corp.*, 63 P.3d 272, 278 (Alaska (continued...)

more informal and inexpensive procedures in practicing before the Board[32] accomplish this goal without construing "knowingly" to have different meanings in the two subsections. We therefore conclude that "knowingly" has the same meaning in subsection (b) as in subsection (a) and is a subjective standard.[33]

### 2. The Board's credibility finding is binding for purposes of appellate review.

The Board found credible Cummings's testimony that she was never paid for her work at Alaska Herb USA, that it was purely voluntary, that "she was only

---

[31]     (...continued)
2003).

[32]     *See* AS 23.30.135(a) (providing that Board not bound by rules of evidence or procedure unless required by statute).

[33]     Use of the scienter standard from the Restatement, which ARCTEC urges us to adopt as an alternative to the "objectively reasonable" standard, would produce the same result. The speaker's subjective belief is an important factor in determining whether a misrepresentation is fraudulent:

> The fact that the misrepresentation is one that a man of ordinary care and intelligence in the maker's situation would have recognized as false *is not enough* to impose liability upon the maker for a fraudulent misrepresentation under the rule stated in this Section, but it is evidence from which his lack of honest belief may be inferred. So, too, it is a matter to be taken into account in determining the credibility of the defendant if he testifies that he believed his representation to be true.

RESTATEMENT (SECOND) OF TORTS § 526 cmt. d (1977) (emphasis added). *See also Jacobs v. Dist. Unemployment Comp. Bd.*, 382 A.2d 282, 288 (D.C. App. 1978) (citing comment to explain how surrounding circumstances can be evidence of state of mind in unemployment fraud case, where court decided that subjective standard applied to question of knowing falsity of statement). Another comment says that "knowledge of falsity is not essential; it is enough that [the maker] *believes* the representation to be false." RESTATEMENT (SECOND) OF TORTS § 526 cmt. c (1977) (emphasis added).

pursuing a hobby to keep her engaged and positive while she was enduring her disability," and that she did not consider it to be employment that she needed to report. The legislature has given the Board "the sole power to determine the credibility of a witness," and the Board's determination of credibility "is conclusive even if the evidence is conflicting or susceptible to contrary conclusions."[34] Here, the Board's factual findings and credibility determination led it to the conclusion that Cummings did not knowingly make a false or misleading statement when she endorsed the disability checks.[35]

ARCTEC's argument that using an objective standard would "limit[] the amount of spin that an entire case may be decided upon" is, in essence, an argument that the Board should not have the sole power to determine the credibility of witnesses. But the legislature decided that issue when it enacted AS 23.30.122. The legislature considered rewriting the statute in 2005, when it created the Commission, to require the Board to make specific findings about credibility, but it ultimately chose not to.[36] And in setting out the standard of review for the Commission to apply, the legislature treated the Board's credibility determinations differently from other findings of fact. Findings about witness credibility are binding on the Commission, whereas other findings are subject to substantial evidence review.[37]

---

[34] AS 23.30.122.

[35] We do not imply that Cummings was required to report her activities, even if they qualified as employment. As we observed in *Shehata v. Salvation Army*, Alaska statutes and regulations, in contrast to those of some other jurisdictions, do not require injured workers to report earnings while receiving benefits. 225 P.3d 1106, 1117 & n.37 (Alaska 2010).

[36] *See* Senate Bill (S.B.) 130, § 29, 24th Leg., 1st Sess. (Mar. 3, 2005).

[37] AS 23.30.128(b) provides in part:

(continued...)

Here, the Board found Cummings's testimony credible, and the Commission was bound by that determination.  Her credible testimony supports the Board's finding that ARCTEC failed to prove that she knowingly made a false or misleading statement for the purpose of obtaining workers' compensation benefits.

## V.    CONCLUSION

For the foregoing reasons, we AFFIRM the Commission's decision.

---

[37]    (...continued)

The commission may review discretionary actions, findings of fact, and conclusions of law by the board in hearing, determining, or otherwise acting on a compensation claim or petition.  The board's findings regarding the credibility of testimony of a witness before the board are binding on the commission.  The board's findings of fact shall be upheld by the commission if supported by substantial evidence in light of the whole record.