NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| HAROLD P. KANKANTON, | Court of Appeals No. A-11093 |
| Appellant, | Trial Court No. 3AN-11-421 CR |
| v. | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2440 — January 30, 2015 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Warren W. Matthews, Judge.

Appearances: Kelly Taylor, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge ALLARD.

---

[*]    Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Following a jury trial, Harold P. Kankanton was convicted of two counts of second-degree theft for stealing two "access devices."[1] One count involved the theft of various credit cards. The other count involved the theft of a driver's license. The superior court sentenced Kankanton to 3 years to serve on each count with the sentences to run concurrently.

On appeal, Kankanton challenges only his second conviction (the conviction for theft of a driver's license), arguing that a driver's license does not qualify as an "access device" under Alaska law.

Having reviewed the language and legislative history of the relevant statutes, we conclude that there is minimal support, if any, for the State's claim that the legislature intended a driver's license to automatically fall within the definition of an "access device." Because the legislative intent is ambiguous, the rule of lenity requires us to construe the statute against the government. We therefore reverse Kankanton's conviction for theft of the driver's license.

*The definition of "an access device" under Alaska law*

Under AS 11.46.130(a)(7), a person commits second-degree theft "if with the intent to deprive another of property, or to appropriate property of another to oneself or a third person, the person obtains the property of another" and the property is "an access device."[2] The term "access device" is defined under AS 11.81.900(b)(1):

> "access device" means a card, credit card, plate, code, account number, algorithm, or identification number, including a social security number, electronic serial number, or password, that is capable of being used, alone or in conjunction with another access device or identification

---

[1]    AS 11.46.130(a)(7).

[2]    AS 11.46.130(a)(7); AS 11.46.100(a)(1).

document, to obtain property or services, or that can be used to initiate a transfer of property[.]

Under the plain language of this statute, an item is an "access device" if (1) it falls within the listed categories — "a card, credit card, plate, code, account number, algorithm, or identification number, including [but not limited to[3]] a social security number, electronic serial number, or password" — and (2) it is "capable of being used, alone or in conjunction with another access device *or identification document*, to obtain property or services."[4]

The same legislation that enacted this definition of "access device" separately defined "identification document" as "a paper instrument, or other article used to establish the identity of a person," including "a social security card, driver's license, non-driver's identification, birth certificate, passport, employee identification, or hunting or fishing license."[5]

Thus, a driver's license is specifically included in the definition of an "identification document," but it is not specifically listed as an "access device." The question presented in this appeal is whether we should nevertheless construe the definition of "access device" to encompass a driver's license because it is a type of "card" or "identification number" that could be "capable of being used, alone or in conjunction with another access device or identification document, to obtain property or services."[6]

_____

[3]   AS 11.81.900(b)(31) (defining "includes" to mean "includes but is not limited to").

[4]   AS 11.81.900(b)(1) (emphasis added).

[5]   AS 11.81.900(b)(30); *see* ch. 65, § 17, SLA 2000.

[6]   AS 11.81.900(b)(1).

The legislative history of the relevant statutes provides no guidance on this question. During committee discussion of the legislation, a representative of the Alaska Public Defender Agency expressed concern that the definition of "access device" could potentially be construed to include a driver's license, but committee members did not respond to that concern or indicate whether or not they agreed with it.[7] Accordingly, we must discern the legislature's intent from the face of the relevant statutes and the surrounding discussion of its purpose.

The statutes defining "access device" and "identification document" were enacted in 2000 as part of a larger crime bill addressing the problem of identity theft.[8] At the time, the third-degree theft statute criminalized only "[theft] of a credit card."[9] The 2000 legislature replaced the term "credit card" with "access device" to ensure that the theft of a person's credit card number — or other number or code capable of being used to commit theft electronically — was punishable to the same extent as the theft of a physical credit card.[10]

As part of the same crime bill, the legislature amended other sections of the criminal code to bring it up-to-date with the more technologically sophisticated means through which people improperly access the finances and financial credit of others. The offense of "fraudulent use of a credit card" thus became "fraudulent use of an access

---

[7] *See* Minutes of Senate Judiciary Committee, C.S.S.B. 259, testimony of Blair McCune, Deputy Director, Public Defender Agency, Department of Administration, log no. 362 (Mar. 3, 2000).

[8] *See* ch. 65, § 17, SLA 2000.

[9] *See* former AS 11.46.140(a) (2000). In 2005, the legislature moved "theft of an access device" to the second-degree theft statute, making it a class C felony instead of a class A misdemeanor. *See* ch. 67, § 1, SLA 2005.

[10] *See* ch. 65, § 3, SLA 2000; *see also* Minutes of House Finance Committee, C.S.S.B. 259, statement of Rep. Gene Therriault (Apr. 20, 2000) (explaining that theft of an "access device" was intended to encompass theft of a debit card or other credit device).

device,"[11] a class B felony when the offender obtains more than $25,000 in property or services.[12] In other sections of the code, the legislature opted to replace the term "credit card" with "access device *or* identification document." Thus, the crime of "obtaining a credit card by fraudulent means" became the crime of "obtaining an access device or identification document by fraudulent means."[13] The legislature also created the new crime of first-degree criminal impersonation, which makes it a felony to recklessly damage the financial reputation of a person by using the person's access device or identification document without authorization "to obtain a false identification document, open an account at a financial institution, obtain an access device, or obtain property or services."[14]

As this discussion makes clear, in the 2000 identity theft bill, the legislature assigned distinct meanings to the terms "access device" and "identification document" — enacting separate definitions in AS 11.81.900 and creating some criminal offenses that penalize conduct involving access devices and other criminal offenses that penalize conduct involving both access devices and identification documents.

The State argues that these terms are not mutually exclusive. In its view, a driver's license, like a social security card, can function as an identification document *and* as an access device, because it is potentially "capable of being used, alone or in conjunction with another access device or identification document to obtain property or services."[15]

---

[11] *See* ch. 65, § 4, SLA 2000 (amending AS 11.46.285).

[12] AS 11.46.285(b)(1).

[13] *See* ch. 65, § 5, SLA 2000 (amending AS 11.46.290).

[14] *See* ch. 65, § 6, SLA 2000 (enacting AS 11.46.565).

[15] AS 11.81.900(b)(1).

We agree that a driver's license, like an access device, might be used "to obtain property or services" — for instance, to open a bank account or to obtain credit. But this is potentially true of all the items listed in the definition of "identification document," including a birth certificate, passport — even a hunting license. We think if the legislature had intended "theft of an access device" to mean "theft of an access device *or* an identification document," it would have said so, as it did in other sections of the criminal code.

The State also cites to several federal cases that have treated a driver's license as an "access device" under federal law.[16] But the federal definition of "access device" that these cases discuss does not differentiate between "access device" and "identification document" in the same way that the Alaska definition does.[17] In addition, the federal definition to which the State analogizes Alaska's definition applies to the fraudulent *use* of access devices, not to simple theft.[18]

Having reviewed the legislative history of AS 11.81.900(b)(1) and the larger statutory scheme that was enacted at the same time, we conclude that the legislative intent with regard to whether a driver's license is an "access device" for purposes of the second-degree theft statute is, at best, ambiguous. We are therefore

---

[16] *See, e.g.*, *United States v. Jones*, 551 F.3d 19, 25-26 (8th Cir. 2009) (finding that counterfeiting driver's licenses amounted to producing counterfeit access devices for purposes of base-offense-level enhancement under the federal sentencing guidelines); *United States v. Jacobs*, 545 F. App'x 365, 367 (6th Cir. 2013) (noting in dicta that a "counterfeit access device" includes a "fake driver's license").

[17] 18 U.S.C. § 1029(e).

[18] *See* 18 U.S.C. § 1029(a) (criminalizing conduct related to fraudulent use of "access devices"); *United States v. Blake*, 81 F.3d 498, 506 (4th Cir. 1996) (noting that 18 U.S.C. 1029(a) does not criminalize theft of access devices); *cf.* La. Rev. Stat. Ann. § 14:70.4(D)(1) (defining "access device" as including driver's license numbers only in context of statute criminalizing access device fraud and requiring proof of intent to defraud).

required by the rule of lenity to construe the definition of this statutory term against the imposition of criminal liability.[19] Accordingly, we vacate Kankanton's conviction for second-degree theft of the driver's license and remand this case to the superior court for further proceedings, including to determine whether entry of judgment against Kankanton for fourth-degree theft is appropriate.[20]

*Conclusion*

We REVERSE Kankanton's second-degree theft conviction for theft of a driver's license (Count V) and REMAND to the superior court for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[19] *See Haywood v. State*, 193 P.3d 1203, 1206 (Alaska App. 2008); *State v. ABC Towing*, 954 P.2d 575, 579 (Alaska App. 1998).

[20] *See* former AS 11.46.150(a) (2011) (theft of property worth less than 50 dollars); *see also* former AS 28.15.271 (2011) (setting fee for duplicate driver's license at 15 dollars).