NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| JOSHUA W. COLE,<br><br>                    Appellant,<br><br>          v.<br><br>STATE OF ALASKA,<br><br>                    Appellee. | Court of Appeals No. A-12442<br>Trial Court No. 1AG-13-00001 CR<br><br>O P I N I O N<br><br>No. 2661 — October 17, 2019 |

Appeal from the Superior Court, First Judicial District, Sitka, David V. George, Judge.

Appearances: Kelly R. Taylor, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Elizabeth T. Burke, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, Harbison, Judge, and Suddock, Senior Superior Court Judge.[*]

Judge SUDDOCK.

---

[*]   Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

In 2012, L.P., a twelve-year-old girl residing in Angoon, disclosed that Joshua W. Cole had sexually abused her on two occasions. The authorities arranged for L.P. to give a videotaped statement describing this abuse. Cole was subsequently charged with first- and second-degree sexual abuse of a minor based on the first incident, and two counts of second-degree sexual abuse of a minor based on the second one.[1]

Although L.P.'s videotaped statement would normally be hearsay, Alaska Rule of Evidence 801(d)(3) provides that a pretrial videotaped statement "by the victim of a crime who is less than 16 years of age" is not hearsay if certain foundational requisites are met. Cole objected pretrial that two of these foundational requisites were not satisfied. Following a two-stage evidentiary hearing, the court overruled this objection, finding that the foundational criteria were met. But the court conditioned admission of the videotaped statement on L.P. testifying at trial before the video was played to the jury.

Cole was convicted on all counts, and he now appeals, arguing that the trial judge erred when he found the foundational requisites of Rule 801(d)(3) to be satisfied. For the reasons explained here, we find no error.

Cole also claims that the judge should have sustained his objection when, during the prosecutor's closing argument, she informed the jury that she was not required to prove the specific dates of Cole's crimes, even though the indictment charged that each incident occurred during a specific month of the year. But the prosecutor's evidence firmly placed each incident within the time frame specified in the indictment. And, contrary to Cole's argument in this appeal, he never raised the sort of alibi defense that might have made the timing of the crimes a significant issue. Accordingly, we conclude that Cole was not prejudiced by the prosecutor's remark.

---

[1]   AS 11.41.434(a)(1) and AS 11.41.436(a)(2), respectively.

*Facts and proceedings*

When L.P. was two years old, she was adopted by a couple living in Angoon. L.P. suffered from fetal alcohol spectrum disorder, and she had consequent learning disabilities. L.P.'s adoptive maternal grandmother, Marie Demmert, also resided in Angoon. L.P. visited her grandmother's house often and would sometimes stay there overnight.

Demmert's biological granddaughter Eileen Hunter, and Hunter's boyfriend Joshua Cole, shared a bedroom in Demmert's house. In March 2011, while Hunter was away, Cole fondled L.P.'s breasts and digitally penetrated her vagina as she was resting on a bed at Demmert's house.

In September 2011, L.P.'s mother brought L.P. to Alaska State Trooper Christopher Umbs, who interviewed her about whether Cole had sexually abused her. L.P. repeatedly denied that Cole had touched her sexually. L.P. was eleven years old at the time.

About a year later, in October of 2012, while L.P. slept on a couch in her grandmother's living room, she awakened to find Cole crouching on the floor next to her. Cole attempted to digitally penetrate L.P.'s vagina, but she turned away. Cole then began fondling L.P.'s breasts through her shirt. He was almost immediately interrupted by Cole's girlfriend Hunter, who emerged from their bedroom and asked Cole what he was doing to L.P. According to L.P., Cole said "nothing," stood up, and accompanied Hunter back to their bedroom.

Soon after this happened, L.P. told her older stepbrother, Norman Joseph, that Cole had touched her "private area." Shortly thereafter the family reported the matter to the authorities, and Trooper Umbs arranged for L.P. to be interviewed on videotape in Juneau at the Child Advocacy Center ("CAC").

During this interview, L.P. described both incidents of her sexual abuse by Cole. She also recanted her earlier denials from the September 2011 interview with Trooper Umbs.

*Cole's challenges to the admission of L.P.'s videotaped interview*

Cole filed a pretrial motion opposing the admission of the CAC interview, contending that L.P.'s statement failed to satisfy the requirement of Evidence Rule 801(d)(3)(H) that the court must "determine that [the statement] is sufficiently reliable and trustworthy and that the interests of justice are best served by admitting the recording into evidence."

The court held an evidentiary hearing at which L.P., her mother, and Trooper Umbs testified. Trooper Umbs testified that during L.P.'s interview at the Juneau CAC, he and another person had observed the interview via closed-circuit television in an adjoining room. (L.P.'s mother testified that she believed that three persons had observed the interview in this fashion.) Umbs further testified that, toward the end of the interview, interviewer Jennifer Narvaez briefly visited the observation room to consult about followup questions. Narvaez then resumed the interview and posed questions along the lines suggested by the observers.

During argument at the close of the hearing, Cole's defense attorney objected to admission of L.P.'s statement on the ground that L.P.'s interviewer had failed to identify "each person participating in the taking of the statement" on the video recording, as required by Rule 801(d)(3)(E). The defense attorney pointed out that Narvaez had identified herself on the videotape, but she had not identified the observers in the adjoining room.

After the evidentiary hearing, the State filed a supplemental pleading identifying the persons in the adjoining room as Trooper Umbs, Keith Merrifield from Catholic Social Services, and Brian Messing, a CAC employee. (We note that these

same observers are identified on the title page of the transcript for the CAC video recording.)

The judge later issued a written order, conditionally finding that all of the foundational requisites of Rule 801(d)(3) had been satisfied. As to subsection (d)(3)(E), the judge noted that "L.P. and Mrs. Narvaez, who took L.P.'s statement and conducted the interview, were identified on the recording."

The judge set a second evidentiary hearing to afford the parties a further opportunity to present evidence on the issue of whether L.P.'s statement was "sufficiently reliable" to qualify for admission under Rule 801(d)(3)(H), and to clarify the meaning of that section's requirement that the judge find "that the interests of justice are best served by admitting the recording into evidence."

During that hearing Jennifer Narvaez confirmed that, after a brief intermission late in L.P.'s interview, she had crafted followup questions based on suggestions from the persons observing the interview via closed-circuit television. After hearing further argument, the judge found that L.P.'s statement was sufficiently reliable and that its admission into evidence served the interests of justice.

> *Why we conclude that the judge did not err in finding that the foundational requirement under Alaska Evidence Rule 801(d)(3)(E) was met*

As noted, Evidence Rule 801(d)(3) provides for the admission of out-of-court statements made by children who are alleged to be the victims of a crime, so long as those statements meet certain requirements. Under the rule, a child's recorded out-of-court statement is not hearsay and is therefore admissible into evidence, if the child is less than sixteen years of age, and if the following foundational matters are established:

> (A) the recording was made before the proceeding [at which it is being offered];

(B) the victim is available for cross-examination;

(C) the prosecutor and any attorney representing the defendant were not present when the statement was taken;

(D) the recording is on videotape or other format that records both the visual and aural components of the statement;

(E) each person who participated in the taking of the statement is identified on the recording;

(F) the taking of the statement as a whole was conducted in a manner that would avoid undue influence of the victim;

(G) the defense has been provided a reasonable opportunity to view the recording before the proceeding; and

(H) the court has had an opportunity to view the recording and determine that it is sufficiently reliable and trustworthy and that the interests of justice are best served by admitting the recording into evidence.

If the trial court finds that any of these foundational requirements are not met, the videotaped interview is not admissible under Evidence Rule 801(d)(3).

Here, the parties disagree regarding the meaning of the foundational requirement that "each person who participated in the taking of the statement is identified on the recording."[2] Cole argues that once the persons observing the interview on closed-circuit television gave suggestions to the interviewer during a break late in the interview, they became "participants" in the taking of L.P.'s statement within the meaning of subsection (d)(3)(E), and that their late-stage participation then required the interviewer to directly identify them on the recording.

The State argues that subsection (d)(3)(E)'s requirement that the participants be identified "on the recording" should be construed to apply only to those

_____

[2]   Alaska Evid. R. 801(d)(3)(E).

persons physically present in the interview room, *i.e.*, to persons whose verbal statements, body language, or other qualities might somehow directly influence the child's interview experience in some undue way. The State reasons that even if out-of-room observers provide off-record suggestions for additional questions, the child will be unlikely to intuit the genesis of those questions, and the court will be able to evaluate the propriety of the questions based on their merits rather than on who suggested them.

Evidence Rule 801(d)(3) is a legislatively enacted rule.[3] We are required to interpret the rule "according to reason, practicality, and common sense, considering the meaning of the [rule]'s language, its legislative history, and its purpose."[4] The parties provide no legislative history shedding light on the intended breadth of the phrase "each person who participated in the taking of the statement," and our independent research has revealed none.

We discussed the overarching legislative rationale for this evidence rule in *Augustine v. State*.[5] The bill's sponsor, Senator Hollis French, testified that the bill would enhance truth-finding at trials by affording children a safe venue to give their accounts free of the intimidating factors inherent to a courtroom, with questioning by persons trained to neutrally elicit information. Senator French specifically mentioned two important safeguards to this procedure: a judge would be required to evaluate whether the child had been subjected to undue influence, and also to evaluate whether the child's statement was trustworthy.[6]

---

   [3]   *See Augustine v. State*, 355 P.3d 573, 582 (Alaska App. 2015).

   [4]   *Brown v. State*, 404 P.3d 191, 193 (Alaska App. 2017) (quoting *ARCTEC Servs. v. Cummings*, 295 P.3d 916, 920 (Alaska 2013)).

   [5]   *Augustine v. State*, 355 P.3d 573, 582-83 (Alaska App. 2015).

   [6]   *Id.*

We have canvassed statutes in multiple other states that provide for admission of videotaped interviews by child victims of crime. The most common foundational requirement in those statutes that require on-record identification of participants in the interview is that the interviewer must identify all persons *heard* on the videotape. None of these statutes require the identification of persons who are merely consulted off-record.[7]

Here, the only persons present in the interview room were Narvaez and L.P., both of whom were identified on the recording. The observers — Trooper Umbs, Keith Merrifield, and Brian Messing — were identified on the front page of the transcript of the recording, but were not identified in the recording itself. We perceive no reason why observers must be identified on the recording, even if they are consulted before or during the interview. As the State points out, any questions suggested by the observers can still be assessed on their own merits based on the recording.

This is not to say that the presence of observers is necessarily irrelevant to the reliability and trustworthiness assessment that the trial court must make. The State should still report the identities of any observers to the defense so that the defense can determine whether the presence of the observers raises issues of undue influence. But the failure to include that information on the recording itself does not, on its own, preclude admission of the videotaped interview. In this case, the State *did* notify the defense of the identities of the observers, and we therefore need not decide the precise contours of when and how the identity of observers must be disclosed.

---

[7] Ariz. Rev. Stat. Ann. § 13-4252(A)(3) ("[e]very voice on the recording is identified"); Kan. Stat. Ann. § 22-3434(a)(2)(c); Ky. Rev. Stat. Ann. § 421.350(3)(c); La. Stat. Ann. § 15:440.5(A)(5); Mo. Ann. Stat. § 492.304(1)(5); Okla. Stat. Ann. tit. 10A, § 1-4-505(B)(6); R.I. Gen. Laws Ann. § 11-37-13.2(b)(3); Tenn. Code Ann. § 24-7-123(b)(6); Utah R. Crim. P. 15.5(a)(5).

Accordingly, we find no error in the trial court's finding that the foundational requirement under Evidence Rule 801(d)(3)(E) was met.

### *Why we conclude that the judge did not err in finding that the foundational requirement under Alaska Evidence Rule 801(d)(3)(H) was met*

Under Rule 801(d)(3)(H), the court must "determine that [the videotaped statement] is sufficiently reliable and trustworthy and that the interests of justice are best served by admitting the recording into evidence." Cole argues that the judge erred when he found that this foundational requirement was satisfied.

Relying on our decision in *Augustine*, Cole argues first that the judge erred when he failed to make detailed findings directly addressing each and every one of Cole's challenges to the reliability of L.P.'s statement. But Cole did not make such a request to the judge. In any event, we are unpersuaded by Cole's reliance on *Augustine*. In *Augustine*, the judge affirmatively declined to determine the reliability of the proffered video statement *at all*, instead ruling that the weight of the evidence was for the jury to decide. Faced with this total abrogation of the judge's duty as gatekeeper, we remanded the case for the judge to enter reliability findings.[8] But the record in Cole's case reflects that the judge independently assessed the reliability and trustworthiness of L.P.'s statement and shows that, unlike in *Augustine*, the judge fulfilled his important gatekeeper role.

Cole next argues that the judge misapplied the interests of justice standard. This claim rests on a subtle semantic difference that Cole did not point out below — a difference between the judge's use of the phrase "the interests of justice" in his oral decision and the language of the rule that "the interests of justice are best served by

---

[8] *Augustine*, 355 P.3d at 585-86.

admitting the recording into evidence." We have reviewed the record and we perceive the court's phrasing to be, if anything, a linguistic slip, rather than a substantive misunderstanding.[9]

Finally, Cole argues that the judge applied the wrong evidentiary standard to the foundational requirements. According to Cole, the judge was required to apply a clear and convincing standard when making these determinations. But Cole did not raise this claim in the trial court proceedings, and because he did not obtain a ruling on the applicable standard of care, we cannot tell what evidentiary standard the judge used, or would have used had this claim been made in the trial court. For these reasons we conclude that Cole has waived this claim.[10]

We have reviewed the record, and we conclude that the judge's findings of fact and conclusions of law adequately address whether L.P.'s statement met the requirements of subsection (H). We accordingly deny Cole's request that we remand the case and require the judge to enter additional findings of fact regarding this matter.

---

[9] *See Bierria v. Dickinson Mfg. Co.*, 36 P.3d 654, 657 (Alaska 2001) ("[M]ore important than how the test is phrased is how it is applied."); *see also In re Life Ins. Co. of Alaska*, 76 P.3d 366, 370 (Alaska 2003) (concluding that the superior court's brief references to "substantial evidence" during its oral ruling did not show that the court had failed to apply the correct standard of review (de novo)).

[10] *See, e.g.*, *Pierce v. State*, 261 P.3d 428, 430-32 (Alaska App. 2011) ("[A] litigant is not entitled to pursue a claim on appeal unless that claim was presented to the lower court, and unless the lower court issued a ruling on the merits of that claim.").

*The court did not err when it overruled defense objections to the prosecutor's final argument*

As explained earlier in this opinion, Cole was charged with committing sexual assaults on L.P. at the home of her adoptive maternal grandmother Marie Demmert on two separate occasions — in March 2011 and in October 2012.

The evidence at trial showed that L.P. would stay overnight at Demmert's house (where Cole and his girlfriend Hunter also lived) during L.P.'s mother's monthly trips to Juneau to purchase household supplies.

The State's evidence placed the first incident of abuse in March 2011. At that time, Cole and Hunter were expecting their first child. For several weeks prior to the baby's birth on April 1, 2011, Hunter stayed in Juneau while Cole remained in Angoon.

The State's evidence placed the second incident of abuse in October 2012, on one of two weekends that L.P. stayed overnight at Demmert's house while her mother was in Juneau.

Soon after this second incident, L.P. told her older stepbrother Norman Joseph that Cole had touched her "private area." At the time of this disclosure, L.P. and her family were staying at a hotel in Juneau awaiting the birth of Joseph's daughter, who was born on October 16, 2012.

During her final argument, the prosecutor told the jury several times that the State did not bear the burden of proving the exact dates of the crimes, and at one point stated that the State did not have to prove the exact months of the crimes. The defense attorney twice objected to the prosecutor's characterization of the State's burden, telling the judge this misstated "the law of alibi." The judge overruled these objections.

Cole now argues on appeal that the trial court erred when it allowed the prosecutor to argue that the State did not have to prove the exact dates of the alleged

offenses. Specifically, Cole asserts that the judge effectively permitted the prosecutor to amend the indictment to eliminate any timing parameters, and that this amendment prejudiced his defense.

Under Alaska law, the State is not obligated to prove the date of an alleged crime, so long as the defendant is sufficiently on notice of the charged crime to meaningfully defend against it. As we held in *Larkin v. State*,

> Alaska law follows the same rules described in LaFave and in Wright: the rules that the date of the offense is normally not a material element of the offense, and that a variance between the date specified in the indictment and the date revealed by the evidence at trial will not support an attack on the judgement unless the variance prejudiced the defendant's ability to prepare or present their defense.[11]

Here, we conclude that Cole was not prejudiced by the prosecutor's statements for two reasons.

First, even though the prosecutor stated briefly in closing that the State was not required to prove that Cole's crimes occurred during the respective months charged in the indictment — March 2011 and October 2012 — the evidence at trial actually did so, and the prosecutor never argued that the crimes occurred at other times. The evidence at trial firmly linked the crimes to those two months. Testimony at trial related each incident to the weeks preceding the birth of a baby — the first incident to the birth of Hunter's baby, and the second to the birth of L.P.'s brother's baby. The weeks preceding each respective birth fell within the March 2011 and October 2012 time frames charged in the indictment.

Second, although Cole's objections below were based on "the law of alibi," Cole did not actually present alibi defenses excluding his opportunity to abuse L.P.

---

[11] *Larkin v. State*, 88 P.3d 153, 157 (Alaska App. 2004).

during the charged months. As to the March 2011 occurrence, Cole (who did not testify) offered no evidence that he was away from Angoon during that month; his defense attorney merely argued that since L.P. denied in her September 2011 statement that Cole had abused her, he must not have done so. This general denial did not amount to an alibi defense.

And as to the October 2012 occurrence, L.P.'s mother testified that she twice traveled to Juneau in early October, each time leaving L.P. in Demmert's care in Angoon. Cole presented documentary evidence that he was in Juneau during the first of those trips, but not the second. Indeed, in his statement to Trooper Umbs, Cole admitted that he was present at Demmert's house on an October night, that he encountered L.P. sleeping on a living room couch, that Hunter entered the room and asked him what he was doing, and that he then returned to his bedroom with Hunter. L.P. and Hunter both testified to those same facts, and L.P. added that Cole molested her just before Hunter's arrival.

Cole's case is analogous to an Illinois case, *People v. Stevens*.[12] Stevens argued that a jury instruction informing the jury that the date of the crime alleged in the indictment was not an element of the charged offense had prejudiced his defense. The court held that because Stevens (like Cole) actually admitted that he was present on the night in question, he was not prejudiced by the instruction.

Here, while Cole's alibi defense only excluded two days falling within October 2012, evidence at trial suggested that the crime likely occurred during the following week. L.P., Hunter, and Cole each acknowledged Cole's presence on an October night during which Hunter saw Cole next to the couch on which L.P. was lying.

---

[12] *People v. Stevens*, 115 N.E.3d 1207, 1215-16 (Ill. App. 2018).

We therefore conclude that Cole suffered no prejudice when the prosecutor told the jury that the State did not have a burden to prove the exact date (or month) of Cole's crimes.

*Conclusion*

We AFFIRM the judgment of the superior court.