NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*
*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections @ akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| BRANDON LEE BAER, | Court of Appeals No. A-13081 |
| Appellant, | Trial Court No. 3KN-16-01302 CR |
| v. | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2709 — October 1, 2021 |

Appeal from the Superior Court, Third Judicial District, Kenai, Anna M. Moran, Judge.

Appearances: Sharon B. Barr, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Elizabeth T. Burke, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge ALLARD.

Brandon Lee Baer was found guilty of theft in the second degree, multiple counts of theft in the fourth degree, and providing false information to a peace officer.[1] After trial, the multiple theft counts merged into a single conviction for second-degree theft, and the court sentenced Baer on this consolidated count to 4 years with 2 years suspended (2 years to serve), and a 4-year term of probation.[2]

On appeal, Baer raises three claims. First, he challenges the trial court's ruling that a social security card qualified as an access device for purposes of the second-degree theft statute. Second, he argues that the trial court erred in admitting evidence of a burglary for which Baer was not charged. Third, he claims that the trial court erroneously imposed two special probation conditions.

For the reasons provided in this opinion, we reject Baer's claims of error and affirm the superior court's rulings.

*Background facts and proceedings*

In November 2015, Brendan Steele's storage unit, located at the Soldotna U-Haul, was burglarized. Numerous items were taken from the unit, including two guns, multiple rounds of ammunition, camera gear, backpacks, coats, and Steele's passport, social security card, birth certificate, and vaccination records. Police investigated the incident but did not arrest anyone in connection with the burglary.

Approximately eleven months later, on October 1, 2016, officers from the Kenai police and fire departments responded to a call regarding a fire on the side of a road in town. While on scene, the police observed flares that had been fired over the

---

[1]   Former AS 11.46.130(a)(7) (2016), AS 11.46.150(a), and AS 11.56.800(a)(1)(B)(i), respectively. He was found not guilty of disorderly conduct under AS 11.61.110(a)(1).

[2]   For the conviction of providing false information to a peace officer, the court sentenced Baer to 60 days in jail, concurrent with the theft conviction.

highway, apparently unrelated to the fire, and once the fire had been extinguished, the officers tried to find the source of the flares. Eventually, officers made contact with a man, later identified as Baer, who had approached the scene and began to babble incoherently. Police officers restrained Baer when he became combative. On Baer's person, the police found a number of documents bearing Brendan Steele's name — specifically, Steele's passport, social security card, birth certificate, and vaccination record. The police also found two spent flare cartridges in Baer's pocket.

Baer was placed in an ambulance and transported to the hospital for evaluation. He identified himself as Brendan Steele and provided the officers with a phone number for his father, Bob Steele. However, the officers determined that Baer did not look like the man in Steele's passport photo, and the number Baer provided to reach his father was disconnected. After Baer was medically cleared from the hospital, he was booked into the jail as "John Doe" on charges of disorderly conduct (for firing the flare gun) and providing a false report. It was not until the following morning, when the shift sergeant identified him as Brandon Baer, that his true identity became known.

Following this incident, Baer was charged with: one count of theft in the second degree for unlawful possession of Steele's social security card; three counts of theft in the fourth degree for unlawful possession of Steele's passport, vaccination record, and birth certificate; and one count of knowingly giving false information or reports for misidentifying himself to responding officers.[3] Baer was not charged with the burglary of Steele's storage unit.

The case proceeded to trial, and the State presented testimony from Brendan Steele as well as multiple officers with the Kenai and Soldotna Police Departments. Baer

---

[3] Baer was also charged with one count of disorderly conduct for firing the flare gun over the highway, but he was ultimately acquitted of this charge at trial.

testified in his own defense, claiming to have been drugged while hitchhiking prior to the incident where he was taken into custody by the police. He testified that he recalled telling officers his name was Brendan Steele but that Steele's documents had been placed in his backpack by someone else without his knowledge.

The jury found Baer guilty of each of the theft charges and providing false information. The sentencing court merged the various counts of theft into one conviction for theft in the second degree and imposed a composite sentence of 4 years with 2 suspended and a 4-year term of probation.

This appeal followed.

### *Baer's claim that a social security card should not be considered an access device under AS 11.81.900(b)(1)*

Baer was charged with theft in the second degree under AS 11.46.130(a)(7). At the time of Baer's offense, a person was guilty of this crime if they committed theft as defined in AS 11.46.100 and the stolen property was an access device.[4] "Access device" is statutorily defined as, *inter alia*, an "identification number, including a social security number . . . that is capable of being used . . . to obtain property or services."[5] The State's theory was that Baer unlawfully possessed Steele's social security card. The State asserted that because the card contained Steele's social security number, it qualified as an "access device."

Near the close of trial, during a discussion about proposed jury instructions, Baer raised a challenge to the charge of theft in the second degree. Baer acknowledged that the definition of "access device" under AS 11.81.900(b)(1) included a social security

---

[4] Former AS 11.46.130(a)(7) (2016). As we will explain, this provision was later amended to include identification documents. FSSLA 2019, ch. 4, § 16.

[5] AS 11.81.900(b)(1).

*number*, and that because a social security card necessarily contains a social security number, a social security card would appear to fall within the definition of an access device. But Baer pointed out that a social security *card* was defined, under a separate subsection, as an "identification document." Baer therefore argued that because a social security card was separately defined as an identification document, the legislature must have intended to exclude it from the definition of an access device. He therefore asked the court for a directed verdict on the second-degree theft charge.

The superior court denied Baer's request and ruled that a social security card was an access device for purposes of second-degree theft. The jury ultimately convicted Baer of this charge, and Baer now appeals the superior court's ruling.

Baer's claim presents a question of statutory interpretation that we review *de novo*.[6] Our role is to "ascertain the legislature's intent and then construe the statute so as to implement that intent."[7] In doing so, we aim to interpret statutes "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[8]

We begin by noting that the legal question at issue in this appeal arises only because at the time of Baer's conviction, the second-degree theft statute criminalized theft of an "access device," but not theft of an identification document.[9] In 2019,

---

[6] *Brown v. State*, 404 P.3d 191, 193 (Alaska App. 2017).

[7] *Id.* (quoting *Williams v. State*, 2015 WL 4599554, at *3 (Alaska App. July 29, 2015) (unpublished)).

[8] *Id.* (quoting *ARCTEC Servs. v. Cummings*, 295 P.3d 916, 920 (Alaska 2013)).

[9] *See* former AS 11.46.130(a)(7) (2016).

however, the legislature amended AS 11.46.130(a)(7) to include theft of either an "access device" *or* "identification document."[10]

Under the statute applicable at the time of Baer's offense, a person committed second-degree theft "if with intent to deprive another of property or to appropriate property of another to oneself or a third person, the person obtain[ed] the property of another" and the property was "an access device."[11] The term "access device" is defined under AS 11.81.900(b)(1):

> "access device" means a card, credit card, plate, code, account number, algorithm, or identification number, including a *social security number*, electronic serial number, or password, that is capable of being used, alone or in conjunction with another access device or identification document, to obtain property or services, or that can be used to initiate a transfer of property[.][12]

The same legislation that enacted this definition of "access device" separately defined "identification document" as "a paper, instrument, or other article used to establish the identity of a person," including "a *social security card*, driver's license, non-driver's identification, birth certificate, passport, employee identification, or hunting or fishing license."[13]

The plain language of the statute supports the conclusion that a social security card is necessarily included in the definition of an access device because a social security card *contains* a social security number. In arguing the contrary position, Baer

---

[10]  FSSLA 2019, ch. 4, § 16.

[11]  AS 11.46.100(1) & former AS 11.46.130(a)(7) (2016).

[12]  AS 11.81.900(b)(1) (emphasis added).

[13]  AS 11.81.900(b)(32) (emphasis added); *see* SLA 2000, ch. 65, § 17.

relies on the canon of statutory interpretation *expressio unius est exclusio alterius — i.e.*, that "where certain things are designated in a statute, 'all omissions should be understood as exclusions.'"[14]

Baer's argument might be persuasive if the phrase "social security number" were not specifically listed within the definition of "access device." For example, in *Kankanton v. State*, we found that a driver's license — which is specifically included in the statutory definition of "identification document" but not the definition of "access device" — could not be fairly construed as an access device under the theory that it is a type of "card" or "identification number" that was "capable of being used, alone or in conjunction with another access device or identification document, to obtain property and services."[15] We acknowledged that a driver's license would appear to technically fit the definition of access device, but we concluded that given the legislature's specific inclusion of driver's licenses within the definition of "identification document," "the legislative intent with regard to whether a driver's license is an 'access device' for purposes of the second-degree theft statute is, at best, ambiguous."[16] We therefore applied the rule of lenity and construed the definition of "access device" narrowly, against the imposition of criminal liability.[17]

Here, by contrast, the legislative intent is not ambiguous: the statute specifically includes "social security number" within the definition of an access device,

---

[14] *Croft v. Pan Alaska Trucking, Inc.*, 820 P.2d 1064, 1066 (Alaska 1991) (quoting *Puller v. Anchorage*, 574 P.2d 1285, 1287 (Alaska 1978)).

[15] *Kankanton v. State*, 342 P.3d 840, 842 (Alaska App. 2015), *aff'd*, 368 P.3d 613 (Alaska 2016).

[16] *Id.*

[17] *Id.*

and a social security card necessarily contains a social security number.

Furthermore, a review of the legislative history of AS 11.81.900(b)(1) does not reveal anything to suggest that the legislature intended to exclude a social security card from the definition of "access device." Nor has Baer cited to any legislative commentary or discussion to support his argument. As we explained in *Kankanton*, the statutes defining "access device" and "identification document" were enacted in 2000 as part of a larger crime bill, and the legislature replaced the term "credit card" in the third-degree theft statute at the time with "access device" to ensure that the theft of a person's credit card number — or other number or code capable of being used to commit theft electronically — was punishable to the same extent as the theft of a physical credit card.[18]

By including "social security number" within the definition of "access device," rather than "social security card," it is apparent the legislature intended to criminalize theft of the number itself — however that number was obtained. A social security card that contains the individual's social security number is therefore necessarily included in the definition. The fact that a social security card is also considered an identification document, because it can be used to establish a person's identity, does not change this analysis. The inclusion of the broader term — social security number — in the definition of "access device" is consistent with the legislature's intent to ensure the second-degree theft statute criminalizes forms of identity theft beyond stealing a person's physical cards.

Finally, reason and common sense support this conclusion. Under Baer's interpretation of Alaska's theft statutes as they existed at the time of his offense, it would have been a felony offense to steal a piece of paper with a person's social security

---

[18] *Id.* at 841-42; *see also* SLA 2000, ch. 65, §§ 3, 17.

number written on it, but stealing the person's actual social security card would only have been punishable as a misdemeanor.[19] We do not think that the legislature would have enacted such a policy — particularly where theft of a person's physical social security card would potentially cause even greater hardship for the victim than theft of the number alone.

For these reasons, we reject Baer's argument that a social security card is not an access device and conclude that it is properly considered both an access device and identification document. Accordingly, we affirm the superior court's ruling.

*Baer's claim that the trial court erred in admitting evidence of the burglary*

Prior to the beginning of trial, Baer asked the court to preclude admission of any evidence relating to the burglary of Steele's storage unit. Baer argued that, given the lack of evidence connecting Baer with this offense, any discussion of the burglary at trial would be confusing to the jury and unfairly prejudicial. The court denied Baer's motion, ruling that testimony regarding how Steele's documents became missing was relevant to the theft charges in Baer's case and that Baer's motion was too vague given the limited information before the court at that time.

At trial, the State presented extensive evidence regarding the burglary of the storage unit and the subsequent police investigation. In its opening argument, the prosecutor referenced the burglary and all of the items that were stolen in its opening argument. Steele then testified regarding the variety of items that were taken from his storage unit, informing the jury that the items included firearms, multiple rounds of ammunition, camera gear, backpacks, and coats, as well as his passport, social security

_____

[19] *See* AS 11.46.150(a) (prohibiting theft of property or services with a value of less than $250).

card, birth certificate, and vaccination records. The investigating officer testified almost exclusively about the burglary — what was taken and how it was accomplished — and provided numerous photographs of the storage unit from his investigation, which were admitted into evidence. But on cross-examination, the officer also told the jury that there was no evidence connecting Baer to this burglary. Baer did not object to any of this testimony.

During the State's closing, however, in an explanation of how the jury could infer from Baer's possession of Steele's documents that he intended to deprive Steele of them, the prosecutor implicitly suggested that Baer had committed the burglary. In particular, the prosecutor told the jury that Baer "never informed Steele about the documents over nearly eleven months." Baer objected to this argument, and the superior court sustained Baer's objection.

The prosecutor then attempted to clarify to the jury that the State was not alleging that Baer was the person who stole the documents from Steele's storage unit. The court interrupted and gave the jury the following curative instruction:

> [L]adies and gentleman, you're not to speculate about that. There's absolutely no evidence that Mr. Baer was in any way associated with that burglary. It came in to show you what happened next and why the documents were gone. But you're not to infer or assume that he was . . . in any way a part of that.

On appeal, Baer argues that the testimony elicited at his trial regarding the burglary of Steele's storage unit was irrelevant and prejudicial and that the court erred in admitting this evidence.

We review the court's ruling in light of the record that existed at the time the ruling was made.[20] Here, Baer did not identify specific evidence he sought to exclude, but rather made a broad request for the court to exclude any evidence of the burglary before the trial began. The court's ruling — that some evidence of how Steele's personal documents went missing was relevant to Baer's charges and that the motion was otherwise too vague to make any further exclusionary ruling at that time — was reasonable in light of the limited information before the court pretrial. It was therefore Baer's burden to continue to make objections as the case unfolded and more evidence was brought before the court.[21]

Baer, however, did not make another objection to any mention of the burglary of Steele's storage unit until the State's closing argument. Thus, with respect to the admission of specific evidence at his trial, he must now show plain error.[22]

The State concedes that much of the testimony elicited at Baer's trial regarding the burglary of Steele's storage unit was irrelevant, considering the lack of evidence of Baer's involvement in the incident, and that the prosecutor should have avoided introducing it at trial. We agree. To prove the theft charges against Baer, the State had to demonstrate that Baer obtained Steele's property and intended to deprive him of it.[23] The specific facts surrounding where, when, and how the documents found in Baer's possession were stolen; the fact that other items such as guns, ammunition, and

---

[20] *See Conley v. Alaska Commc'ns Sys. Holdings, Inc.*, 323 P.3d 1131, 1138-39 (Alaska 2014) (noting that a court rules on a pretrial motion based on the information before it).

[21] *Id.* at 1139 (holding that a broad objection to the admission of evidence pretrial does not release a party from their burden to object to the evidence's use during trial).

[22] *Id.*; *see also Adams v. State*, 261 P.3d 758, 773 (Alaska 2011).

[23] *See* AS 11.46.100(1).

camera equipment were taken at the same time; the police investigation of the burglary; and the suspected method of entry into the storage unit were all ultimately irrelevant to proving these charges.

However, to establish plain error, Baer must show that the error was prejudicial — *i.e.*, there was "a reasonable probability that it affected the outcome of the proceeding."[24] We conclude that evidence of the burglary did not improperly influence the jury's decision, in light of the other evidence presented at Baer's trial.[25] There was no dispute that Baer was in possession of Steele's personal documents at the time of his arrest, and there was no implication that Baer possessed any of the other stolen property.

Moreover, the investigating officer testified explicitly that there was no evidence indicating Baer was involved in the burglary. Indeed, the court specifically admonished the jury not to speculate about Baer's involvement in the burglary. And the court reiterated, "There's absolutely no evidence that Mr. Baer . . . was [in] any way associated with that burglary."

Accordingly, we conclude that, even though much of the testimony related to the burglary of Steele's storage unit was largely irrelevant to proving the charges against Baer, any error in admitting such evidence was harmless.

*Baer's claim that Special Probation Conditions Nos. 2 and 7 are plainly erroneous*

The superior court sentenced Baer to 4 years of supervised felony probation with general and special conditions of probation. Baer did not object to any of the

---

[24]   *Adams*, 261 P.3d at 773.

[25]   *See Nelson v. State*, 628 P.2d 884, 889 (Alaska 1981) (finding harmless error in the introduction of evidence related to the underlying burglary at grand jury where the defendant was charged only with receiving the stolen property).

probation conditions at his sentencing hearing.

On appeal, Baer argues that two of the special conditions violate his constitutional rights and therefore must be reversed as plainly erroneous. First, he challenges Special Condition No. 2, which states:

> The defendant shall notify any prescribing authority of their drug use history. Upon issuance of a narcotic prescription the defendant shall inquire about non-narcotic alternatives for treatment. Upon the request of the probation officer, the defendant shall sign a release of information to verify compliance with this condition.

Baer acknowledges that this condition is reasonably related to his admitted history of substance abuse, but he claims that this condition impermissibly infringes on his constitutional right to privacy in conversations with his medical providers. However, because he did not object to this condition at sentencing, Baer must now demonstrate plain error.[26]

After reviewing the record, we determine that Baer has not satisfied this test. The contested probation condition does not ultimately impact Baer's ability to receive treatment and necessary prescription medication from his doctor. Rather, the condition requires only that Baer *inform* his doctor about his drug history and *ask* about alternative pain management medication. The condition similarly authorizes Baer's probation officer only to verify compliance with this limited instruction and does not allow the probation officer to interfere or otherwise prevent Baer from receiving prescription medication. For these reasons, we conclude that the superior court did not plainly err in imposing Special Condition No. 2.

Baer also challenges Special Condition No. 7, which prohibits direct or indirect contact with Brendan Steele and the Soldotna U-Haul. Baer argues that the

---

[26] *See State v. Ranstead*, 421 P.3d 15, 21-23 (Alaska 2018).

Soldotna U-Haul was not a victim, given the absence of any evidence connecting Baer with the burglary of the storage unit, and therefore the court should not have precluded Baer from contacting the facility.

The State concedes that the Soldotna U-Haul was not a victim in Baer's case, but argues that a probation condition prohibiting Baer from contacting the U-Haul facility was generally reasonable and not unduly restrictive.

We agree that the Soldotna U-Haul was not properly a "victim" in Baer's case. But Baer did not object to this condition at sentencing, and thus there is no evidence or argument in support of the disputed condition for us to review.[27] For example, it is not clear whether Steele continues to maintain a storage unit at the facility, and it is not clear whether the Soldotna U-Haul supported the condition, given that Baer possessed documents taken in a burglary of the business. On the record that exists, we cannot say that Special Condition No. 7 was obviously erroneous.[28]

On appeal, Baer claims that the no contact provision regarding the U-Haul facility is "an area restriction" and therefore impacts his constitutional rights to freedom of association, travel, and liberty.[29] But Baer cites to no cases where we have treated a prohibition on contacting a business like a restriction on travel or on entering an area open to the general public; indeed, businesses are generally free to determine who is allowed on their property. We conclude the superior court did not plainly err in imposing Special Condition No. 7.

---

[27]  *See id.* at 21.

[28]  *See Adams*, 261 P.3d at 764 (requiring an error to be "obvious" for it to be "plain").

[29]  *See Foley v. Anchorage*, 1996 WL 650223, at *1 (Alaska App. Nov. 6, 1996) (unpublished) (citing *Oyoghok v. Anchorage*, 641 P.2d 1267 (Alaska App. 1982)).

*Conclusion*

For the reasons provided in this opinion, the judgment of the superior court is AFFIRMED.